BENNINGTON,
*February,*
1842.

Hurd
*v.*
Darling *et al.*

TRUMAN HURD *v.* WILLIAM DARLING, ELIAKIM AMEDON, GARDNER P. NELSON and MARSHALL HURD.

> One tenant in common cannot maintain trover against his co-tenant of the same chattel, for any act less than the destruction of his interest therein.
>
> If one let a farm to another, to be paid for the use of it in one half the crops, to be delivered on the farm, the lessor is only a tenant in common of the crops, at most, until his portion is severed.
>
> *Quære.*—Whether he be strictly a tenant in common even ?

TROVER, for thirty tons of hay. Plea, not guilty, and trial by jury.

On the trial in the county court, the plaintiff gave in evidence a written agreement, or lease, signed by him and the defendant, Darling, but not sealed, of the following tenor, viz:

' Know all men by these presents that I, Truman Hurd, ' of Sandgate, do covenant with and agree to farm let ' to William Darling, of said Sandgate, in the following ' manner, viz : all the land by me let to Daniel Beebe, on the ' south east corner ; also, the farm of late owned and occupied ' by Roswell Woodward, to have, hold, and occupy the afore- ' said premises for the term of two years, with nine cows, ' one yoke of steers, one span of horses ; also, one plow, one ' harrow, and one yoke ready for use ; also, one half of the ' seed to be sowed and planted on said farms, and one half ' of the implements necessary for the dairy on said places. ' And I further agree to make up the number of cows to ' twenty at the commencement of the second year, or before, ' and to pay one half of the taxes, except the highway tax, ' and to risk one half of the stock.

' And I, the said William Darling, for myself, agree to ' take and occupy said places for said term, in a good husband- ' like manner, and deliver to said Truman, on said farm, one ' half of all the crops, except that fed to the stock on said ' places, said produce to be divided by weight and measure, ' and also to keep the tools in order and pay all of the high- ' way taxes, one half of the other taxes, and to risk one half ' of the stock.

' And we both agree to divide equally between us the in-

'crease and profits of said stock, so put on by the said Tru-
'man.

  'Signed and witnessed this 1st day of April, 1838.'

The plaintiff also introduced testimony tending to prove that the defendant, Darling, occupied the premises, under said contract, or lease, two years; that, in the month of of December, 1839, during the continuance of the lease, the defendant, Darling, refused to take further care of the plaintiff's stock upon the farms mentioned in the lease; that the plaintiff procured one William Baker to feed the hay from the barn, on the premises, to the stock, which then consisted of between thirty and forty head of cattle; that, about two weeks after said Baker took the charge of said hay and cattle, the defendants took the hay in question from said premises; that the hay so taken was nearly all the hay on the premises, and the plaintiff was immediately compelled to remove his stock and hire them kept elsewhere.

The defendant introduced testimony tending to show that the plaintiff removed the cows, hogs, and other stock, from the farm in the fall of 1839, taking the profits to himself, and returned them, in part, only, at the setting in of winter, and that the defendant assigned this as a reason for refusing to fodder the stock. It appeared that the defendants, Amedon, Nelson and M. Hurd acted by direction of Darling in removing the hay.

The county court decided that, the testimony being true, the plaintiff was not entitled to recover, and so instructed the jury, who returned a verdict for the defendants, and the plaintiff excepted to the decision and charge of the county court.

  *Sargeant & Miner* for plaintiff.

We contend that the plaintiff owned the whole property in the hay, and that the defendant, Darling, even before he had refused to fodder the cows, at most, was mere bailee of the stock and hay, and had no other or further interest in the hay, after foddering time had commenced, than to see that it was faithfully fed to plaintiff's stock. There was no stock on the place, except what the plaintiff had put on, and not hay enough to keep the stock through the winter; there was only thirty tons declared for, and that would not be sufficient

BENNINGTON,
February,
1842.

Hurd
v.
Darling et al.
to keep twenty cows, a yoke of oxen, and a span of horses. Darling had no stock on the premises, either in his own right, or as joint owner with the plaintiff.

The plaintiff had not only a special, but a general, property in the hay, and trover, or even trespass, would lie against Darling, or any other person, who should take the hay from the premises.

This case is a much stronger one for trover than *Swift* v. *Mosely*, 10 Vt. R. 208. In that case suit was commenced before the lease had expired; here it was not commenced till after. In that case the plaintiff had not taken possession. In this the plaintiff had actual possession at the time of the taking.

In the case above cited, it was decided that trover might lie during the continuence of the term. See also *Martyn* v. *Knowles*, 8 Term R. 146. *Sibley* v. *Story*, 8 Vt. R. 15. *Rice* v. *Clark*, 8 Vt. R. 109.

2. Suppose Darling was the actual owner of a part of the hay, and he had done nothing whereby he lost his right of possession, trover would then lie for the plaintiff's share, if taken when Darling had no right to take it, or if sold, destroyed, or taken from the premises, so that the plaintiff could not get it to fodder to the stock during the winter, or have it at the time when the term would have ended, to wit, on the first of April following.

We think the weight of authorities is entirely in favor of this view of the subject. See *Farrant* v. *Thompson*, 7 C. L. 272; 16 C. L. 61; *Wilson* v. *Reed*, 3 Johns. R. 175; 7 Wendell, 449; *White* v. *Osburn*, 21 Wendell, 72; *Mumford* v. *McKay*, 8 Wendell, 442; *Farr* v. *Smith*, 9 Wendell, 338; *Hyde* v. *Stone*, 9 Cowen, 250; *Mersereau* v. *Norton*, 15 Johns. 179; 1 Swift's Dig. 535, sec. 2; 2 Saunders, 47, h; *Floyd* v. *Day*, 3 Mass. 403; *Barton* v. *Williams*, 7 C. L. 147. Land let on shares, the lessor and lessee are tenants in common of the crop. *De Mott* v. *Hagerman*, 8 Cowen, 220. *Vickery* v. *Taft*, 1 D. Chip. 241. In this case Chief Justice Chipman expressly gives his opinion that trover will lie in such a case, although that question was not directly decided. In the case *Ladd* v. *Hill*, 4 Vt. R. 164, this question was decided after a full hearing. See also *Welch* v. *Clark*, 12 Vt. R. 681. *Tubbs* v. *Richardson*, 6 Vt. R.

442, is not this case. But, in that case, Judge Mattocks thinks the weight of authorities is, that trover will lie by one tenant in common against another for selling the whole of a chattel.

3. After Darling had refused to fodder and take care of the stock, the plaintiff must have had a right to a temporary possession of the hay, for the purpose of foddering it. Should it be said that he had no right to enter for such purpose, it might, with the same propriety, be said that Hurd could not remove the cattle from the premises, and have them foddered elsewhere, after Darling had so refused. The consequence would have been a perfect destruction of the property.

A party entitled to a temporary possession may support trover against the general owner. *Roberts* v. *Wyatt*, 2 Taunt. 268.

4. Hurd had the right to possess the hay in another view. The instrument, called a lease, under which the defendant occupied, is a mere contract, without seal, acknowledgment or record ; and when Darling had refused to proceed further under it, Hurd might do so likewise.

Suppose Darling, in mid summer, had refused to milk the cows, and cut the hay ? Would the plaintiff have been compelled to rely upon his contract, and look to Darling's responsibility merely, or would he have been justified in entering and cutting the hay, taking care of the cows, &c.? And would not Darling by such acts have put an end to the tenancy, so far as he had any beneficial interest in the term ? We think there can be no doubt on this point, and if we are correct, the tenancy, so far as Darling's interest was concerned, was ended when he refused to proceed further under the contract.

5. The case shows that Hurd took possession of the hay two weeks previously to the taking by the defendants, and was foddering it to the stock when it was taken. Let, then, all the other points of law in the case be settled as they may, *this fact*, we think, must determine the case with the plaintiff.

Judge Redfield says, in the case of *Swift* v. *Mosely*, above cited, a person having ' the autual custody of the thing, even wrongfully, may maintain the action (trover) against every one whose right is not superior to his. '

BENNINGTON,     In the case at bar, the plaintiff had actual possession, and
February,     no one of the defendants certainly had a right superior to
1842.     his.

Hurd
v.
Darling et al.     *D. Roberts, Jun.* for defendants.

The relative rights of Hurd and Darling find their scope
and limit in the written contract of April 1, 1838.

I. We contend, that by this, Darling had the sole property
in, and right of possession of, the hay.

This contract is in terms *a lease* from Hurd to Darling of
two farms, certain cows, &c. for the term of two years, that
is, ' a contract that the one shall devest himself of the posses-
' sion, and the other come into it for such a determinate time.'
Bac. Ab. Leases, (K.)   What it professes to be, being ac-
companied by possession under it, it is in substance and in
fact.   As a parol lease, it was, at any rate, good for one year,
and Darling continuing his possession after the close of the
first year, became in like manner lessee and tenant for the
second year.   If void, as a lease, in respect to its duration,
that is, as a lease for two years, still as Darling occupied
under the contract, the terms of his tenancy must be regula-
ted by it.   *Doe* dem. *Rigge* v. *Bell*, 5 T. R. 471.   Roberts
Frauds, 245.   *Schuyler* v. *Leggett*, 2 Cowen, R. 660.
*People* v. *Rickett*, 8 Cowen, 226.

By the agreement, then, attended with occupation under
it, Darling had an estate in the soil, exclusive ownership and
possession of the farms, cows, &c., for the two years. Thus he
had by it a right to the use of wood for burning, repairing,&c.,
though not expressly given—an important circumstance. So,
too, Hurd could not have maintained trespass *qua. clau.* for
an injury done to the freehold during the two years by a
stranger, for the reason that *he had no possession.*   *Catlin*
v. *Hayden*, 1 Vt. R. 375.

This contract differs from an ordinary letting upon shares
for a single crop, where the occupier may be considered as
but a laborer or servant for the owner, who retains possession.
*Jackson* v. *Brownell*, 1 Johns. R. 267, 272. 4 Kent's Com.
96.   *Bishop* v. *Doty*, 1 Vt. R. 37.   It follows then, that
Darling, being the owner of the premises for the two years,
was the owner of whatever grew upon them during the term;
and having exclusive possession and right of possession of

the former, had such possession and right of possession of the latter, but subject to account to Hurd upon and according to his agreement. A removal of a part of the hay from the premises may have been a violation of his contract to conduct the premises in a husbandlike manner, but was no conversion of the property of Hurd. To test this, suppose Darling had supplied the place of this hay with other fodder purchased, so that at the close of his term he had been able to restore the stock in good condition, and as much had been consumed upon the land as grew upon it, of what could Hurd have complained? Would there not have been a perfect fulfilment of the contract? Bull, N. P. 85, cited in 3 Johns. R. 218.

II. But if this agreement was not a lease, if it gave Darling no estate in the land, but was only an ordinary letting upon shares for a single crop, then Hurd and Darling were tenants in common of the crops, and of whatever else was to be divided. *Hall et al.* v. *Celey*, Cro. Eliz. 143. *Foote et al.* v. *Calvin*, 3 Johns. R. 216. *Bradish* v. *Schenck*, 8 Johns. R. 117. *Bishop* v. *Doty*, 1 Vt. R. 37.

It was with the hay as with the other crops. Darling had a beneficial interest in it. Having such an interest, any act other than a destruction of the property would not have made him liable to Hurd in trover. Co. Litt. 200, a.

If a sale of the whole would be regarded as equivalent to a destruction of the property, which perhaps is doubtful in Vermont, (Bennett, J. in *Welch* v. *Clark*, 12 Vt. R. 684, 5, 6,) the sale of any less part would not seem to be. *Tubbs* v. *Richardson*, 6 Vt. R. 442.

A tenant in common cannot maintain trover against his companion for a thing still in his possession. 1 Wms. Saund. 47, f. note 1. In this case there is neither proof nor presumption, that Darling had parted with the possession of the hay before suit brought.

III. Hurd and Darling may be regarded rather as partners in farming business, than as tenants in common. If so, it is clear that trover would not lie to recover back what either had received above his share. *Albee* v. *Fairbanks*, 10 Vt. R. 314.

This is not the case of a bailment of the hay for a particular use, so that the cases, (*Rice* v. *Clark*, 8 Vt. R. 109,

*Swift* v. *Mosely et al.* 10 Vt. R. 208,) which decided that the application of the thing bailed to a different use from the use intended, is a conversion, do not apply. Besides, in those cases, a knowledge on the part of the defendant of the intended use is made material. But here the character of Darling's tenancy does not appear to have been made known to the other defendants.

The opinion of the court was delivered by

REDFIELD, J.—In this action the only questions raised are whether the plaintiff had any such property as will enable him to maintain this action, and, if he had, whether the defendants have done any act which will amount to a conversion.

1. The interest of the plaintiff in the property sued for is, at most, that of a tenant in common. It is true it was hay and grain, grown upon the land of the plaintiff, but land which he had leased to the defendant, Darling, for two years, the rent to be paid in one half of all the crop, except what was consumed in keeping the cattle which were let with the farm and were to be kept upon it. It is true, also, that the contract is not a technical lease ; but it was in writing and fully executed, and sufficiently binding upon the parties themselves, both at law and in equity, at least as to what was done under it. It is, in terms, a letting of the land. The terms are ' do covenant and agree to farm let.' And the defendant on his part agrees, to '*carry on the farm,* in a ' good husbandlike manner, and to *deliver* said Truman, on ' said farm, *one half of all the crops.*' The defendant occupied the land the full term. In the month of December, the defendant refused to take further care of the stock, leased with the farm, and the plaintiff procured some one to fodder them. Soon after this the defendants removed the hay and grain from the farm. It is obvious, we think, that here was a letting of the land, and the defendant could not be said to have performed his part of the contract until he had ' delivered,' i. e. set apart, plaintiff's portion of the crops. So that at the time of the alleged conversion, most clearly, no portion of the property sued for had vested in the plaintiff, in severalty. And it is questionable how far he could be said to be seized of the property, as tenant in common, *Bishop* v. *Doty,* 1 Vt. R. 37.

2. But if the plaintiff were tenant in common, the defend-
ant had the same right to possession which he had, and
nothing which defendant should do with the property, short
of destroying plaintiff's interest therein, would amount to a
conversion of it, as against him. This is not pretended, for he
did not even sell it, which, as it would seem, does not amount
to a conversion. *Tubbs* v. *Richardson*, 6 Vt. R. 442, and
cases there cited.

Judgment affirmed.