## Moulton *v.* Robinson.

## Ladd *v.* Robinson.

Where lands are leased, reserving a part of the crops in lieu of rent, the contract takes effect by way of reservation, and the crops thus reserved remain the property of the landlord.

The landlord may maintain trespass for any injury done to the crops before severance, either alone, or jointly with the tenant.

If either the landlord or tenant sue severally, advantage can be taken of the nonjoinder only by plea in abatement, or in the assessment of damages.

Trespass will lie against a sheriff for taking and selling the whole property on an execution against one cotenant only.

Pettingill *v.* Bartlett, 1 N. H. Rep. 87, overruled.

THESE were actions of trespass, for taking, carrying away and converting to the defendant's own use, certain hay of the plaintiff. The defendant pleaded the general issue, and filed a brief statement, that the property was taken by him as a sheriff, by virtue of an execution against Ladd.

The hay was cut upon a farm in the occupation of Ladd, under a lease from the other plaintiff, Moulton. The material part of the lease is this: " The produce to be divided when harvested, excepting the hay, which is to be used equally on said farm, and the proceeds or gain of the stock to be divided when disposed of." The evidence tended to show that the defendant took and sold all of the hay, and without leaving to Ladd what is exempted from attachment.

The defendant's counsel contended, that neither Moulton nor Ladd had such a title as would sustain an action of trespass, and that Moulton cannot maintain trespass against an officer who takes the whole, upon an execution against one of the tenants in common. In the first action the court directed a verdict for the defendant, and in the second for the plaintiff, subject to the opinion of the superior court.

*Hutchinson* and *J. Bell*, for the plaintiffs.

*Lyford*, for the defendant.

BELL, J. It is in vain to seek in the recent books of the English common law for the rules which should regulate the rights of landlord and tenant, as to that part of the produce of the land which the tenant agrees to render to the landlord, as his share of the income of the property in the nature of rent. The contract known here as letting at the halves, or letting on shares, and which is one of the most common, as well as the most convenient modes of letting farming property, seems to a great extent unknown there. Principles have found a place in the books there, which deny to a grantor or lessor the power to except, in his conveyance or lease, any part of the produce or crops growing upon the land, or to reserve, either as rent or in any other way, any part of such produce or crops. Thus Coke says, (Co. Litt. 142 a,) "but a man upon his feoffment or conveyance, cannot reserve to him parcel of the annual profits themselves, as to reserve the vesture or herbage of the land, or the like, for that should be repugnant to the grant. *Non debet enim esse reservatio de proficuis ipsis, quia ea conceduntur, sed de redditu novo extra proficua.*"

It would seem that from the rule thus laid down, and repeated in later books, have arisen the decisions in that country and in this, which hold that the landlord has no interest in the hay or other crop, which the tenant has agreed to expend on the farm, and no remedy, if the tenant fails to perform his agreement, except upon his covenant, *Ridgeway* v. *Strafford*, 4 Eng. L. & E. 453, and that if land is let upon shares for a single crop that does not amount to a lease, but the possession remains in the owner. *Hare* v. *Celey*, Cro. El. 143; *Bradish* v. *Shenck*, 8 Johns. 151; *Bishop* v. *Doty*, 1 Vt. Rep. 37.

We think the law is not correctly stated in the books cited, or in the modern books which follow it. The true

doctrine is laid down by Bracton, li. 2 fol. 32, b. and 249, cited by Coke, (Co. Litt. 47 a.) " *Poterit, enim quis rem dare et partem rei retinere, vel partem de pertinentiis, et illa pars quam retinet semper cum eo est et semper fuit.*"

There can be no good reason why a grantor should not be at liberty to except out of his grant any part of it which he chooses not to include in his conveyance, or to reserve to himself any part of the income which he has not agreed to sell, and which the purchaser has agreed he should retain. The questions which arise in cases of this kind are merely questions of construction, and of the intention of the grantor, in the language he uses. If the exception is in its nature inconsistent with the grant, or such that it defeats or subverts the entire object of the grant, or any part of it distinctly and specifically described, it will be held void for repugnancy ; but if it be consistent with the general object of the grant, if it merely operates to limit the effect of the general terms used in the grant, there, either an exception or reservation will be valid and effectual. Such is evidently the opinion of the author of the Touchstone, p. 79, where he says : " If the exception be such as is repugnant to the grant, and doth entirely subvert it and take away the fruit of it, as if a man grant a manor or land to another, excepting the profits thereof, or make a feoffment of a close of meadow or pasture, reserving or excepting all the grass of it, these are void exceptions." And Preston adds, [as a man may grant, so it is apprehended he may except the tonsure or vesture of a meadow. In short, whatever a man may grant in direct terms, he may, it is apprehended, except.] The objection being, as we regard it, not to the reservation of part of the profits of the land as such, but to any reservation, which substantially defeats the grant.

While we regard this as the true doctrine of the ancient common law, we consider all the cases where it is held that upon a letting on shares the lessor has an interest in the crops before they are severed, as effectually, though not in'

terms, supporting this doctrine.    In most of these cases it has been held, that such letting on shares does not amount to a lease, but constitutes the lessor and lessee tenants in common of the premises, but while we agree that a reservation of a share of the crops constitutes the parties tenants in common of that crop, it seems to us by no means to follow, that they are tenants in common of the land, or that the agreement does not constitute a lease, or make the cultivators, tenants.    The view taken by *Livingston*, J., in *Jackson* v. *Brownell*, 1 Johns. 272, seems to us in most respects correct and unanswerable.    Speaking of such cultivators, he says : " They had every character of a tenant, and not of mere laborers for the owner of the soil.    They took under a contract to possess for a year.    They occupied the same house.    They had an interest or estate in the land.    They paid rent in grain.    They might bring their own cattle on and reap what they pleased from it, except grain, which was to be divided, and, what is very important, they had a right *to the* use of wood for burning, repairing, &c., and *if they contin*ued in possession, by mutual consent, after the end of the first year, a tacit renovation of the original contract would have been implied, and they could not have been dispossessed, without a notice to quit." As, then, in this class of cases, we think the cultivator must be regarded as a tenant, they must be considered as tending to establish the principle that a landlord may reserve a part of the profits of his land as a compensation for the use of it.

The general principle clearly is, that the hirer of property *prima facie* becomes entitled to all the profits of it, during the time his interest continues.    If this principle were universal, and not under the control of the parties, it would sustain the position that no part of the profits can be either excepted or reserved, but we think that, in the nature of the case, independent of the books, no one can find any reason for limit'ng the right of parties to make such contracts as they may find convenient to themselves in this respect ;.

while in the case of personal property, which is naturally governed by the same rules, there is no restriction upon the owner, forbidding him to stipulate for a part of the profits of the article he lèts to hire. The ship owner stipulates for a share of the freights, and the sheep owner agrees for a share of the wool, and of the increase of his flock; and we are not aware that any doubt was ever entertained of the propriety or legality of such contracts. *Chamberlain* v. *Shaw*, 18 Pick. 278.

The part of the profits of land reserved on a lease might, in the nature of things, admit of being regarded as rent or as an exception from the grant of the profits ordinarily implied in a lease, or letting to hire. But the result of one of these views would be essentially different from that of the other, upon the rights of the parties, lessor and lessee, to the accruing profits, anterior to the time when the lessor's share should be actually divided and set off to him.

If the lessor's share should be regarded as rent, then the whole produce might, perhaps, be regarded as the property of the tenant, and subject to his control, and consequently liable for his debts, until the share of the lessor is set off and delivered to him. This would result from the general idea of the nature of rent, as a *compensation paid* for the use of the property hired. A payment is a transfer of property from one person to another, while the delivery to the owner of his own property, does not affect the property, that is, the right, but merely the possession, and cannot, without an abuse of terms, be regarded as a payment. To entitle the lessor's share of the profits to be regarded as rent, it seems necessary to consider the ordinary implied grant of the profits to exist in the case, and the crops, of course, to be the property of the tenant, until he discharges his contract, that is, pays his rent, by transferring a part to his landlord. If, on the contrary, the share of the landlord is considered as reserved or excepted, then the otherwise implied contract, that the tenant should have the entire profits, is

limited and restricted to a part only of the profits, instead of including the whole; and the right of the landlord to the share of the profits stipulated to be his is unaffected by the contract of lease, and that share remains his during the whole time it is growing or accruing, in the same manner it would be if the tenant were merely his hired servant. The nature of the contract being much the same as if one of two tenants in common should hire his cotenant to carry on his half of the common property.

Which of these views of the relative rights of the parties to contracts of this kind should be adopted, in the absence of express decisions and authoritative declarations of the law, would be determined entirely by the consideration, which was best calculated to carry into effect the intentions of the parties, and was most consistent with the general policy of the law. And upon this question we find it impossible to doubt. It could never be the intention or consent of any judicious landlord, nor the wish of any honest tenant, that the former should have no security for his share of the profits but the honesty of his tenant; nor that the tenant should have it in his power to sell the entire crop, or subject it to the payment of his debts, when in equity and justice, neither he nor his creditors have the slightest claim to more than an undivided share of it. The policy of the law is to give such effect to the contracts of parties as will best carry their intentions into effect, whenever it can be done without hazard to the rights of others; and we are unable to see that this construction can in any way be made the instrument of injustice or fraud to any third person.

We think it is equally settled that a reservation of a part of the profits cannot be regarded as rent, by the books usually looked to as authoritative on such subjects; thus in the Touchstone, page 80, if one grant land yielding for rent money, corn, a horse, spars, a rose, or any such like thing, this is a good reservation, but if the reservation be of the

grass, or of the vesture of the land, or of a common, or other profit to be taken out of the land, these reservations, [considered as rents,] says Preston, are void.

So, 4 Cruise Dig. 312, " the profit reserved as rent must be certain, or that which may be reduced to a certainty by either party. It must also issue out of the thing granted, and not be a part of the thing itself, for a person cannot reserve a part of the annual profits themselves, as the vesture or herbage of the land," as rent, as we understand it.

And in Com. Landlord and Tenant, 95, "A rent cannot be of part of the profits demised, as the herbage or vesture of the land, for that would be an exception out of the grant, not a rent reserved."

The idea of Preston, that if profits are reserved, they are not to be regarded as rent, appears to us sound. And the cases before referred to of letting on shares, are consistent with this view, and lose the character of anomalies, which otherwise seems to attach to them, when they are regarded as cases of reservation.

Though Lord *Coke*, (Co. Litt. 47 a.) in stating the distinction which he makes between exceptions and reservations, where he says : " And note a diversity between an exception, (which is ever of a part of the thing granted, and of a thing *in esse*,) for which *exceptis, salvo, præter*, and the like be apt words, and a reservation, which is always of a thing not *in esse*, but newly created or reserved out of the land or tenement demised," seems to regard particular words and phrases as peculiarly adapted to express an exception or reservation, yet we take it to be now well settled that no particular language is required to express either, and that it is immaterial in what part of a conveyance the meaning of the parties appears. If there is an intention to except or reserve a part of the property, described in general terms, or any part of the income or profits of it, apparent in the premises, in the habendum, in the covenants, or conditions, or elsewhere, the construction will be made upon the whole

deed, and the intention carried into effect. *Webster* v. *Atkinson*, 4 N. H. Rep. 21.

The effect of these views may be seen in the two most common cases of contracts relating to land, where they seem applicable. The first is the ordinary case of letting on shares. There, we hold, that the lessee is properly a tenant, having ordinarily, as against his landlord as well as others, the possession of the land, and the rights growing out of that relation. But the landlord having reserved a share of all the crops, or of some of them, is, as to those crops, a tenant in common, with such rights in regard to the tenant as are not inconsistent with the right of possession of the soil held by him, and with all the rights of a tenant in common as to others. The tenant cannot sell or dispose of the share of the landlord, and the share of the latter cannot be taken, or levied upon, for the debts of the tenant. The rights of both parties are effectually secured. And as to this point, it is wholly immaterial whether the letting *is* for a single crop, or a single year, or for a series of years. Though it seems to have been supposed that something was dependent upon that circumstance. The nature of the contract seems to us to be in no degree dependent upon the length of time for which it continues.

The second case is that under consideration, where it is expressly agreed, or necessarily implied from the nature of the contract, that the tenant shall not acquire any right to a portion of the produce of the land, or that he shall acquire merely some limited and qualified interest. In that case, we hold that the general property in the whole of the specified produce is reserved to, and remains in the lessor, or it accrues to him, as it comes into being, while the tenant at the same time holds or acquires certain special interests in it; or the general property of the share reserved, remains in, or accrues to him, subject to such special interests of the tenant as are necessary, if any, to enable him to execute his part of the contract; while the general property of the share

not reserved to the landlord, becomes vested in the tenant by virtue of the implied grant of the profits ordinarily resulting from every letting to hire, subject to such special interest, if any, as may be reserved to the landlord.

Of the cases thus indicated, that of a reservation of the entire produce of a certain kind, the case of *Kelly* v. *Weston*, 20 Maine Rep. (2 Ap.) 232, is an example. It was there held, in replevin by the landlord against a sheriff, that where a tenant agreed to cultivate and bag the hop crop for the year, in payment of the rent of the farm, the property of the hops was in the landlord; and the tenant acquired no title to the crop; and that no separation or delivery to the landlord was required, where the portion of the produce agreed upon as rent, is never to be the property of the tenant.

The case of a reservation of a share of all the produce, or of certain crops specified, is more common, and the diversity in the opinions of the courts, who have decided cases of this kind, shows, we think, that they have been governed by no such clear and distinct principle as that we have attempted to establish.

In some of the cases it has been held that a contract of this kind, for a single year or crop, does not constitute a lease. *Bradish* v. *Schenck*, 8 Johns. 151; *Hare* v. *Celey*, Cro. El. 143; *Bishop* v. *Doty*, 1 Vt. Rep. 37; *Maverick* v. *Lewis*, 3 M'Cord. 211; *Caswell* v. *Districh*, 15 Wend. 379; *Putnam* v. *Wise*, 1 Hill 247. While in others it seems as clearly held that it does constitute a lease, and makes the parties landlord and tenant. *Jackson* v. *Brownell*, 1 Johns. 267; see 4 Kent Com. 95; *Hoskins* v. *Rhodes*, 1 G. & J. 266.

In some it is held that the owner and lessee are tenants in common of the crop, and entitled to join in an action for any injury done to it. *Hurd* v. *Darling*, 14 Vt. Rep. 214; *Walker* v. *Fitts*, 24 Pick. 191; *Putnam* v. *Wise*, 1 Hill, 234; *Foote* v. *Calvin*, 3 Johns. 216; *Demott* v. *Hageman*, 8 Cow. 220. While in others it has been held that the owner alone

has possession, and can alone maintain trespass for breaking the close. *Hare* v. *Celey*, Cro. El. 143; *Bradish* v. *Schenck*, 8 Johns. 151; *Putnam* v. *Wise*, 1 Hill 248. And in others, that where the share of the crops is agreed to be delivered to the owner, he has no interest until they are delivered. *Rinehart* v. *Oliviere*, 5 W. & S. 157; *Woodruff* v. *Adams*, 5 Blackf. 315; *Brainard* v. *Burton*, 5 Vt. Rep. 97. And that the tenant alone can maintain trespass for a breach of the demised premises during the term. *Woodruff* v. *Adams*, 5 Blackf. 315.

And in several cases, it is held that where a lease extends beyond a single crop, or a single year, the tenant has the entire property of the crops, and the landlord has no interest until his portion has been set off and delivered to him. *Stewart* v. *Doughty*, 9 Johns. 188. Though this seems questioned in *Putnam* v. *Wise*, 1 Hill 248.

In our view, whenever, upon a lease of land, either for one crop or one year, or for several years, the owner of the land is to receive a part of the productions of the land in lieu of rent, the contract operates and takes effect by way of reservation. The share reserved is always the property of the owner of the land, without severance or delivery, though both of these may be stipulated for. In the language of Bracton, "*Illa pars, quam retinet, semper cum eo est, et semper fuit.*" And it is therefore wholly unnecessary to resort to the idea that such a contract to hire is not a lease, or to restrict to cases of lettings for a single year, a principle regarded by eminent judges as wise and beneficial. *Foote* v. *Calvin*, 3 Johns. 216; *Caswell* v. *Districh*, 15 Wend. 37.

Another case is of the character of that now under consideration, where the agreement of the parties to the lease is, that the crops of hay and fodder which may be grown upon the land, shall be consumed upon the farm, in feeding the stock kept upon it, for the common benefit; the agreement being, that the produce or income of the stock should

be divided. Here the true construction of the agreement, upon the principles we have stated, would be, that the lessor excepts or reserves the hay, out of the general grant of the profits, implied upon the letting to hire; and instead of a general grant of the property, he substitutes a grant of a special and qualified interest, a right to use the same in one particular way, for the common benefit of both parties.

The case of *Lewis* v. *Lyman*, 22 Pick. 437, resembles the case before us, and was decided in accordance with our views, though upon reasons of a more general character. By a lease, under seal, it was agreed that the hay should all be fed out on the farm, and that half of the calves should be reared and divided. The hay and the calves were attached upon a writ against the tenant, and the action was brought by the lessor against the officer who made the attachment. It was held that the hay and the calves did not become the property of the tenant, so as to be liable to be attached for his debts. It was contended that the produce of the farm became the absolute property of the tenant, and that the only remedy of the plaintiff was upon his covenants against the tenant.

In delivering the opinion of the court, *Putnam*, J., says, whatever technical objections may be raised, the provisions of the writing are perfectly intelligible, as well as consistent with the rules of good husbandry. The case must be determined according to the true construction of the contract, taking into consideration the whole of it together. The indenture, whereby the plaintiff demised, &c., the farm for one year, would, without explanation or qualification, seem to imply, that the lessor granted to the lessees all the produce for their own use, subjecting the same to their disposal, as well as to the attachments and levies of their creditors. But that part of the indenture is to be compared and construed with other parts, which are inconsistent with such implication. It must be considered in connexion with the provision that all the hay and fodder is to be fed out on the

farm.   And we think that it was not the intent, either of the plaintiff or of the tenants, that the latter should have at their own disposal all the hay and fodder which should be made upon the farm during the year.   Taking the whole contract together, it is manifest that the tenants had a limited right or interest in the hay and fodder, only such a right or bene- fit as would result to them from having it given to the stock upon the farm, whereby their proportion of the produce of the stock would be increased.   The contract cannot be un- derstood as giving to the tenants a right to sell the hay from the farm for their own use.   It cannot be supposed that it was intended to be subjected to their debts, and carried away from the farm.   Such a construction would be unrea- sonable.   All the produce except that part which was grant- ed to the tenants, became and remained the property of the plaintiff.   The provision in the contract, requiring the hay to be spent upon the farm, is conformable to the rules of good husbandry in England, and would be implied from the relation of landlord and tenant, if it were not expressed.   Every tenant, where there is no particular agreement, dis- pensing with the engagement, is bound to cultivate his farm in a husbandmanlike manner, and to consume the pro- duce on it.   *Buller*, J., cited in *Brown* v. *Crump*, 1 Marsh. 567.   The rules of good husbandry require, as a general rule, that the hay or other produce, at least, to the extent of sustaining the stock, should be spent upon the farm, as the means of preserving and continuing the capacity of pro- duction.   According to the true construction of the contract the property in the hay never passed to the tenants, but, on the contrary, the hay was reserved and appropriated to be spent on the farm.   The sheriff had no right to take it away from the farm, by virtue of any attachments or executions against the tenants.   The same principles were held to ap- ply to the case of the calves.

This view of the rights of the parties to a lease, as drawn from a reasonable construction of the contract itself, must

meet the approval of every one, as founded in sound com-
mon sense. It is adopted by the supreme court of Maine,
in *Porter* v. *Cunningham*, 34 Maine Rep. (4 Red.) 192, in
accordance with the case of *Kelly* v. *Weston,* 20 Maine Rep.
(2 App.) 232, but substantially overruling *Turner* v. *Batch-
elder,* 17 Maine Rep. (5 Shep.) 257, which was mainly de-
cided upon the authority of Co. Litt. 142, a., before cited. A
similar view seems to be recognized in Vermont, in *White*
v. *Morton,* 22 Vt. Rep. (7 Wash.) 15, and *Hero* v. *Darling,*
14 Vt. Rep. 214. And a leaning toward the same view is
apparent in the case of *Putnam* v. *Wise,* 1 Hill 234, against
the case of *Stewart* v. *Doughty,* 9 Johns. 108.

In England it is held, in the very recent case of *Ridgway*
v. *Stafford,* 4 Eng. L. & E. 453, *S. C.* 20 Law Jour. N. S.
Ex. 226, that notwithstanding a covenant to expend the hay
upon the land, the tenant has a right to sell the property
unconditionally, and would be merely liable to his landlord
for breach of covenant. From this case it is seen that by a
statute the sheriff in England is not at liberty to carry off
the premises any produce, which by the covenants of the
lease, is to be consumed on the premises, thus recognizing
the justice of the landlord's claim, according to the under-
standing of the community there, not only to hold his ten-
ant, but to hold the specific property agreed to be used on
the premises. Yet the idea of the exclusive right of the
tenant to the crops, notwithstanding any stipulations of the
lease, still holds its ground in that country.

It is not necessary here to consider how far the principal
which we have endeavored to establish, that the landlord
may except or reserve any portion of the growing crops by
express contract, so that the tenant will acquire either no
interest, or a very limited interest in them, may affect the
case of hay and fodder, which, by the rules of good hus-
bandry, is required to be spent upon the farm on which it is
raised; yet we may remark that there is no obvious distinc-
tion between the case of crops, expressly excepted by con-

tract, and those impliedly excepted by the policy of the law; and there can be no doubts that the real objects of parties would be more truly carried into effect, by holding that the tenant acquires neither the ownership nor the right to sell the hay and fodder required to be used on the place, and that the excess alone, above that requisite part, is to be regarded as profits, than by the doctrine of *Ridgway* v. *Stafford*, which gives the property to the tenant.

Adopting these views of the rights of lessor and lessee, as to the property stipulated to be used upon the land, there then arises a question,.what are the relative rights of action of these parties as to third persons ?    And it would seem that wherever the reservation is of an entire crop to the landlord, as of the hops in the case of *Kelly* v. *Weston*, before cited, there the entire property is always in him, and he alone can bring an action for any wrong done to them, the obligation of the tenant to cultivate and harvest being really of the nature of a contract for services.    Where the reservation is of an undivided share, the property of that share is always in the lessor, by virtue of his reservation, while the property of the residue is always in the tenant, by virtue of the implied grant of profits, and they are, therefore, tenants in common of the crop until a division, and, upon the ordinary rules of law, must join in any action for injuries to the joint property.

Where the reservation is of the crops, or some part of them, to be used upon the land, the general property and right to them remains in the landlord; but during the continuance of the lease the possession remains common, because they have a common interest in the cultivation and application of them, the tenant agreeing to cultivate, harvest and use the crop for the common benefit of both.    As tenants in common, they must ordinarily bring their action jointly.

In the present case, separate actions of trespass are brought by both the landlord and tenant, and it is denied that either

has a right to maintain such action.   But it is not seen that
any objection exists to the right of the tenant to maintain
trespass against a mere wrongdoer, since he has the actual
possession, jointly with and for his co-tenant; and it is well
settled that in actions *ex delicto*, if a party, who ought to
join, be omitted, the objection can only be taken by plea in
abatement, or by an apportionment of the damages on the
trial.   *Wilson* v. *Gamble*, 9 N. H. Rep. 74; *Pickering* v.
*Pickering*, 11 N. H. Rep. 141.   But in this case, the attach-
ment appears to have been rightful, as regards the tenant,
as to all the hay and fodder in which he had any interest,
except so much as was by law exempted from attachment.
As to that part of the property, he is entitled to maintain
his action, and notwithstanding the statute provision rela-
tive to actions upon the case against sheriffs, the action
of trespass is the usual and proper remedy for his case.   *Hill*
v. *Loomis*, 6 N. H. Rep. 263; *Peverly* v. *Sayle*, 10 N. H.
Rep. 356.

In the other case, the action by the landlord, the objec-
tion as to the non-joinder is met by the answer given in the
case of the tenant, that no plea in abatement is filed; and
there is a further answer suggested by the case of *Lathrop*
v. *Arnold*, 25 Maine Rep. (12 Shep.) 136, that the officer
might lawfully take the property, by virtue of an execution
against one of the tenants in common, and sell the interest
of that one, and deliver the property to the purchaser, who
would become a tenant in common with the other owner.
The injury is not joint, when the share of one tenant in
common is taken and sold, for as it respects that one the
justification is complete; and if it is not so, it is imperfect,
for some reason, with which the other has no concern.   The
tenants in common do not suffer a joint injury, and they are
not jointly interested in the damages to be recovered.   *Mel-
ville* v. *Brown*, 15 Mass. 82.

But it is further objected to the action of the landlord,
that he is not entitled to maintain this action of trespass,

because he was not in possession of the property, for the taking of which the action is brought, because the actual possession of it was in the tenant, who had, during the actual continuance of his lease, the right to keep it and to control it, without any interference of the landlord. We take the general rule to be, that if the general owner parts with the possession, and the bailee acquires the exclusive right to the use, the owner is confined to his action upon the case, his interest being in its nature reversionary. But, we think, this rule does not apply in this case. As we have suggested, the utmost interest acquired by a tenant in crops, agreed to be consumed upon the place, and of which the general property is reserved by the landlord, is a common interest in the possession and application of the property, making him a tenant in common of the possession. Of such tenants the general rule is, that the possession of one is the possession of both. And we cannot perceive that there is any reason, in the absence of express stipulations to that effect, to presume a grant of any exclusive rights of possession to the tenant of property reserved by their contract for the common benefit.

The remaining question is, whether a sheriff, who has levied an execution against one co-tenant upon the common property, and has proceeded to sell the whole property, is liable to an action of trespass or trover, at the suit of the co-tenant, not party to the execution. This question has been the subject of decision here and elsewhere. In the case of *Pettengill* v. *Bartlett*, 1 N. H. Rep. 87, it was decided, in a case like the present, that trespass could not be maintained against the sheriff, on the ground that the sale by the sheriff could not affect the title of the co-tenant, not named in his process. This decision, it is suggested to us, is at variance with the decisions of other very respectable courts in other jurisdictions, and cannot be reconciled with the decisions of this court, in more recent cases, presenting the same question between other parties, and we are, there-

fore, desired to reconsider the question. That case was de-cided in 1817. The same question arose the next year, in the supreme court of Massachusetts, in the case of *Melville* v. *Brown*, 15 Mass. Rep. 82. The facts were the same as in *Pettengill* v. *Bartlett*, and it was there decided that the officer was liable as a trespasser. In *Lathrop* v. *Arnold*, 25 Maine Rep. (12 Shep.) 136, a like decision was made. In *Weld* v. *Oliver*, 21 Pick. 559, and *White* v. *Morton*, 22 Vt. Rep. (7 Wash.) 15, it was held that, in such a case, trover might be maintained by the co-tenant against the sheriff, for his undivided share of the property.

It has been held, in many cases, that a tenant in common may maintain trover against his co-tenant, for a sale and delivery of the whole property, though it is not questioned that the title of the co-tenant does not pass by such a sale. Thus in *White* v. *Phelps*, 12 N. H. Rep. 382, it was held by *Parker*, C. J., that the general principle is, that, assum-ing to one's self the property and right of disposing of another man's goods, is a conversion. It is so in the case of a sale of the entire property by a tenant in common. The following are to the same point. *Gilbert* v. *Dickinson*, 7 Wend. 449; *Hyde* v. *Stone*, 9 Cow. 230; *Wilson* v. *Reed*, 3 Johns. 175; *Barton* v. *Williams*, 5 B. & A. 395; Mc. C. & Y. 406; *Guyther* v. *Pettijohn*, 6 Ired. 388; *Farr* v. *Smith*, 9 Wend. 338; *Rains* v. *McNary*, 4 Humph. 356; *White* v. *Osborn*, 21 Wend. 72.

It is urged with much force, that if it is a conversion for a tenant in common to sell the whole property, *a fortiori*, it must be a conversion for a third person to make such sale; and that it makes an officer a trespasser *ab initio*, if he wrongfully converts the property which he has rightfully taken into his possession. It is said, too, that these cases strike out the foundation of the decision in *Pettengill* v. *Bartlett*, since they show that the seller, in such cases, may be liable in trespass or trover, though the title to the prop-erty does not, in any of these cases, pass by the sale.

Moulton *v.* Robinson.—Ladd *v.* Robinson.

We are inclined to admit the soundness of these arguments, and to regard the case of *White* v. *Phelps*, as furnishing the true rule of the law. And we are, therefore, of the opinion, that if a sheriff takes into his possession the property of co-tenants, upon process against one only, and sells the whole, it is an abuse of his authority, which renders him liable to the co-tenant for the value of his share, as a trespasser *ab initio*, either in trover or trespass.

In the first action, the verdict must be set aside. In the second, judgment must be rendered on the verdict.