<sup></sup>Aug. 12, 1875. }   WENTWORTH *v.* PORTSMOUTH & DOVER RAILROAD.

*Letting of land upon shares—Trespass qu. cl. not maintainable by landlord during continuance of term.*

The usual contract for a letting of land upon shares in this state, establishes the relation of landlord and tenant between the owner of the land and the other party to the contract, so that the right of possession is in the latter.

A landlord cannot, ordinarily, maintain an action of trespass *quare clausum fregit* for an unlawful entry upon the premises demised during the continuance of the term.

This action was sent to a referee, who found the Portsmouth & Dover Railroad guilty, and assessed damages in the sum of $25, and found Jones not guilty.   By request of the plaintiff, the referee stated specifically his rulings upon all question of law, and all matters of fact found proved, which are hereto annexed and made part of this case. The questions arising upon said report were transferred to the superior court for determination by SMITH, J.

REPORT.

" *   * The referee, at the request of the plaintiff, states specifically

his rulings upon all questions of law, and all matters of fact found proved.

"This is an action of trespass *quare clausum.* Plea, the general issue and a brief statement. It appeared that, on the fourth day of November, 1872, the defendant railroad, having been duly incorporated, filed in the office of the secretary of state the location of their road within the limit fixed by the charter, and in accordance with the provisions of the statute in such case made and provided; that not being able to purchase the right of way for their said road over the plaintiff's land, they, on the 26th of December, 1872, applied to the railroad commissioners to appraise the damage to the plaintiff's land; that such proceedings were had, of which the plaintiff had due and legal notice; that on the first day of February, 1873, the damages were appraised, and, on the 21st day of February, 1873, were tendered to the plaintiff, and he refusing to accept thereof, the same were deposited in the office of the secretary of state, according to law. The defendant railroad having previously advertised for proposals to build their road, on the 18th day of November, 1872, the directors voted that the contract be awarded to George H. Pierce, and on December 12, 1872, the president was authorized to sign the contract with said Pierce in behalf of the railroad, when he should execute a bond for the faithful performance of his contract; and on February 26, 1873, the contract was duly executed. On or about December 12, 1872, one Thorne, who was a sub-contractor, having assurance of a contract from Pierce, the contractor, called on the chief engineer of the road to know where he should commence work, and the engineer sent a boy to point out to him where to commence; and about the same time he commenced within the limits of the road, as staked out, and on the plaintiff's land, and continued with his men and teams at work for several days, constructing a culvert and grading some portions of the road, when the plaintiff, having notice, forbid his further working, and he stopped work. The road had, previous to said December 12, 1872, obtained the right of way of all the land-owners on the line of their road, except the plaintiff and one other.. It appeared that the plaintiff was not living on his farm at this time, but the same was occupied by a tenant under a contract, a copy of which is hereto annexed, marked 'Exhibit A.' The defendants moved for a nonsuit, and also asked the referee to find that the plaintiff was not entitled to recover, on the ground that he was not in possession and had not the right to the possession of the premises in question, and consequently could not maintain this action; but the referee overruled the motions, and the defendants excepted. The plaintiff offered to show that he had expended large sums of money in underdraining and improving his grounds, and that by the entry of Thorne and his workmen the drains had been destroyed, his lawn seriously injured, and his land and fences injured in other respects. It was not, however, claimed that the railroad had been improperly constructed, or that any damage had been done to the plaintiff's land, except such as necessarily resulted from the proper construction of the

road within the limits of the location; and the referee excluded the evidence offered, and ruled that, upon the foregoing facts, the plaintiff could only recover damages for the disturbance of the possession;—to which ruling the plaintiff excepted. The referee finds that the defendant Jones gave no directions in regard to the entry by Thorne, and had no knowledge in regard to it.

"EXHIBIT A.

"The undersigned, Mark H. Wentworth, as owner, and William L. Philbrick as tenant, have entered into the following agreement, for the purchase by the latter of one half of the stock and tools, and the cultivation of the owner's farm of Riverside, on shares for one year, from April 1, 1872: (1) Said Philbrick is to purchase and pay for, on or before April 1, 1872, one half of the live stock then on said farm, at a valuation to be made by appraisers mutually chosen, except as to the Jersey stock, which is to be taken at the rate of purchase, viz., $400 for four animals; or, if said Wentworth retains one of the cows at his residence, then at $300; (2) all the carts, wagons, implements, and tools to be appraised, and said Philbrick to pay cash for one half of them at the appraised value, said Wentworth agreeing to buy them back should this lease or its renewals terminate within five years of its date, at a valuation then to be made, due reference being then had to the first valuation, and due consideration given for the time the same shall have been in use since said first valuation; (3) Philbrick to pay for one half the grass-seed put into the ground during the past season, for one half the amount paid for rockweed bought since July, and for one half the manure on the farm on April 1, 1872, either in heaps in the fields, in the pen, yard, or cellar, at $2.50 per cart-load; (4) said Philbrick to pay cash at an appraising value for one half of so much of farm produce on hand April 1, as may be required for farm use before the next harvest time; (5) said Philbrick to pay one half of all taxes; (6) each of the parties hereto to pay one half for all live stock, tools, seed, and manure, which they may purchase after April 1, 1872; (7) all manure made or bought to be put upon the land, and all bought to be deemed to be effective for three years from time of purchase, so that, in case of termination of the lease (or any renewals of it), said Philbrick shall be refunded on this basis for his cash expenditure for manure, excepting for sea-weed, and on termination of this lease, and consequently of his occupancy, he shall be paid for clear barn manure at the same rate per load of half a cord, for one half of all then on hand, as he now pays, as per article third, for that on hand at commencement of occupancy; (8) said Philbrick to carry on the farm in same thorough manner as it has been heretofore, to sell no stock without owner's consent, to keep roads, fences, tools, and buildings in good order, wear and tear under careful use excepted; no trees whatever to be cut except such as may be pointed out by the owner, to supply said Philbrick with the fuel for his family use on the farm. (9) Said Wentworth reserves to his ex-

clusive use the west half of the farm-house and one half of the carriage-house, with all the rights of ownership thereto, also the rights at any time to sell any portion or the whole of the place, in which case a just compensation shall be made to said Philbrick in case he should thereby sustain any loss, for labor or manure expended on it, or such part of it. (10) Not less than five acres shall be plowed each year, three of which shall be new land, and one of which said Wentworth shall have the right to select from any land heretofore plowed. (11) Said Philbrick agrees to give his whole attention to said farm, to pay for all labor requisite to keep it up, and to pay over and deliver to said Wentworth one half of all the produce of said farm and stock, or one half of all the moneys he may receive from the sale of such, as the same may become marketable or sold, and a just equivalent to be rendered for all produce consumed by his family. All produce not sold when ready, to be stored in the barns or cellar for joint account. (12) In consideration of the true and faithful performance of the foregoing stipulations, said Philbrick is to have to his sole use and benefit one half of all the farm or stock produces, the wood and its growth excepted, during his tenancy under this lease.

Portsmouth, January 20, 1872.

> 50
> Stamp.

Signed in duplicate,

MARK H. WENTWORTH,
WM. L. PHILBRICK.

March 24, 1873.            Renewed the within for one year.
Signed,
                           MARK H. WENTWORTH,
                           WM. L. PHILBRICK."

*C. R. Morrison* and *Goodall*, for the plaintiff.

*Hatch* and *Frink*, for the defendants.

LADD, J. In *Moulton* v. *Robinson*, 27 N. H. 550, there is an elaborate discussion, by BELL, J., of the contract of letting land upon shares, and the relation thereby established between the parties with respect to the right of possession, both of the land itself and of the crops raised upon it during the term. The general conclusions there reached are, that the contract puts the parties in the relation of landlord and tenant; that as to the crops to be divided, they are made tenants in common, and as to the land, the exclusive right of possession is vested in the tenant. On page 557 he says,—" The effect of these views may be seen in the two most common cases of contracts relating to land, where they seem applicable. The first is the ordinary case of letting on shares. There, we hold, that the lessee is properly a tenant, having, ordinarily, as against his landlord as well as others, the possession of the land, and the rights growing out of that relation." He shows that great diversity exists in the opinions of courts who have decided cases

of this sort, but finally adopts, in substance, the propositions stated above as the most satisfactory basis upon which the rights of parties growing out of such contracts can be determined.

Upon a careful reading of the contract between the plaintiff and Philbrick in this case, I am unable to doubt that, so far as regards the respective rights of the parties to possession of the land, it is to be regarded as no more nor less than the ordinary contract of a letting upon shares. All its stipulations are consistent with a general possession and occupation of the land by the tenant, and inconsistent with such possession by the lessor. It is true, there are stipulations as to how the farm shall be carried on, and an exception as to the west half of the farmhouse and one half of the carriage-house, as well as of the wood and its growth. But these exceptions clearly imply that as to the rest the right of possession was transferred to the lessee; and it seems to me that by no fair construction of the whole instrument, read together in the light of *Moulton* v. *Robinson*, can it be held that the right of possession, as to the premises not excepted, remained in the plaintiff. This brings us to the question, whether the landlord can maintain an action of trespass *quare clausum fregit*, for an entry upon and injury to the land during the term. It is undoubtedly true that the authorities upon this point outside of this state are conflicting and unsatisfactory. It is sufficient, perhaps, to refer to the cases of *Starr* v. *Jackson*, 11 Mass. 519, *Campbell* v. *Arnold*, 1 Johns. 511, *Tobey* v. *Webster*, 3 Johns. 468, and the cases referred to by BELL, J., in *Moulton* v. *Robinson*, *supra*, pp. 558, 559. But however the authorities may stand in other jurisdictions, I think the question is to be regarded as settled in this state adversely to the plaintiff in *Anderson* v. *Nesmith*, 7 N. H. 167, followed by *Robertson* v. *George*, 7 N. H. 306. In the former case, both the New York and Massachusetts decisions are referred to and commented on, and the New York doctrine approved and adopted. In the latter, while it was held to be the general rule that a landlord cannot maintain trespass for an entry upon land while in the occupation of a tenant, it is left upon a *quære* whether such form of action is in fact proper, even where an injury of a permanent character has been done to the reversion. In *Anderson* v. *Nesmith* the court say,—"Upon the whole, we have been unable to reconcile the right of a lessor for years to sustain trespass while his lessee is in possession, with the principle that actual possession is necessary to maintain such action."

The doctrine of such cases as *Cox* v. *Glue*, 5 C. B. 533, resting upon the principle stated by Coke (Co. Litt., 4 b.), might have application in cases of this sort, were it not held in this state that a letting upon shares amounts to something more than a grant of the *restrenam terræ*, namely, a demise of the land itself. *Moulton* v. *Robinson*, *supra*. I am unable to see how it can be held that the plaintiff may recover in this form of action upon the facts stated, without overruling cases that have long been regarded as the settled law of this state.

If I am correct in this view, any discussion of the rule of damage to be applied would be premature.

CUSHING, C. J.    Whether the contract between the plaintiff and Philbrick, which they in the last sentence called a lease, and in which the relation established between them is called a tenancy, and in which Philbrick is called a tenant, be or not a letting upon shares, it seems to me that Philbrick, under this contract, had the right to the possession of the land, excepting so much of it as was expressly reserved to the plaintiff; and I do not see that the term "exclusive," applied to the use which the plaintiff reserved of a part of the premises, at all implies any common possession of the rest. Philbrick could not fulfil his contract, could not have reasonable certainty of doing what he had to do and of avoiding what he was not to do, and of deriving the full benefit which he had a right to expect from his labor and outlay, if his possession was liable to be interfered with by the plaintiff. So, the expression "pay over," applied to the half of the crops or of the money realized from their sale, implies rather an exclusive possession and ownership of the crops which he is to pay, than a tenancy in common of the crops, which, perhaps, would be owned in common when they had been stored, as the contract required, on "joint account."

The tenant, then, being entitled to the exclusive possession, the plaintiff cannot maintain an action for injury to that possession. The close, which is alleged to have been broken, is not the plaintiff's close. Those injuries, for which the plaintiff can recover damages, are such as if done by the tenant would be waste, and when done by a stranger are in the nature of waste. The cases cited by my brother LADD show that in this state the remedy must be by an action on the case, and not by an action of trespass. It has, I think, always been held, that the form of action cannot be changed by an amendment. This is a doctrine for which I never could see any very good reason, but which renders the objection fatal to the plaintiff's action.

SMITH, J.    The only question to be considered in this case is, whether the plaintiff, upon the evidence reported by the referee, can maintain trespass quare clausum. I think he cannot. The agreement entered into between the plaintiff and Philbrick is called by them a lease, and, under the authority of Moulton v. Robinson, the relation of landlord and tenant clearly existed between them, and entitled Philbrick to the exclusive possession of the demised premises. Wentworth was not in possession nor entitled to the possession during the term of the lease. The gist of the action is being disturbed in the possession, and unless the plaintiff was in the actual possession at the time the injury was committed, trespass cannot be supported. This is well settled in this state. Lane v. Thompson, 43 N. H. 320; 1 Chitty's Pl. 175; 3 Bl. Com. 210; and authorities cited by my brother LADD.

Case discharged.