NEW-YORK,
May, 1806.

Jackson *ex demis.* C. R. Colden and others, *against* Brownell.

Jackson *ex demis.* Colden and others
v.
Brownell.

THIS was an action of ejectment, for lands in *Pittstown,* in the county of *Rensselear.* The cause was tried at the circuit in *Rensselear* county, on the 30th May 1804, before Mr. Justice *Spencer.* The plaintiff produced, and proved, a lease of 248 acres of land, the premises in question, dated the 15th March, 1794, for the term of 21 years, executed by Alexander Colden, deceased, on the one part, and *Ebenezer Wilson,* as *lessee,* of the other part. The lease contained the following condition: " *That in case the lessee, his executors or administrators should suffer or permit more than one family or tenant, to every* 100 *acres, to reside on, use or occupy any part of the said premises, that then, and in such case, the said lease should be void, and the estate thereby created, cease and determine.*" It was stipulated that the lessor might reserve 70 acres of the premises for a wood lot. An indorsement was made on the same day with the date of the lease, and executed by the parties, by which the *seventy* acres were accordingly reserved, which reduced the quantity to 178 acres. The present action was brought for a breach of the above condition, by which the lease was alleged to have become forfeited. *Wilson,* the *lessee,* occupied the premises, then *Joseph King*—then *Reuben Peckham* and *Seth Peckham* —then *Hughes* and *Butler*—lastly *John Wilcox* and the present defendant, who now live thereon. Four years ago, *Hughes* and *Butler* occupied a farm, parcel of the land in question. One *Hall,* who did not live on the premises, sowed five acres, and by an agreement with the *Peckhams* he was to have the crops, for clearing and inclosing, three of the five acres being new land. *Hughes* resided on the premises from *April* to *February,* and *Butler* sometime longer. They took the farm for a year, and planted it together. They entered under the *Peckhams* who reaped a crop which

*In a lease it was covenanted, " that in case the lessee should suffer or permit more than one family to every* 100 *acres, to reside on, use or occupy any part of the premises, the lease should be void," &c. It was held that letting parts of the premises to persons for a year to cultivate for shares, made such persons tenants within the meaning of the covenant; and there being more than one such tenant to each* 100 *acres, the lease was thereby void. Persons so occupying the land for one year on shares of the crops, have an interest in the land, and are not mere labourers or servants to the lessee.*

NEW-YORK,
May, 1806.

Jackson *ex de-
mis.* Colden &
others
v.
Brownell

had been sowed the preceding season. They lived in one house, sowed their wheat separately, and divided their oats, as they drew in the crop. *Hughes* was to have half of *R. Peckham's* part, and *Butler* the half of *S. Peckham's* part, for one year. The *Peckhams* retained the residue. *Hughes* was to have a third of the crop of wheat. The *Peckhams* were to provide the seed and two thirds of the team. *King* paid rent to the agent of the *Coldens* for the premises in question ; and the *Peckhams* paid rent after *King*.— *Simeon Brownell* purchased the lease and all the right and interest of the *Peckhams*. The defendant and *Wilcox* have been in possession of the premises under *S. Brownell ;* and have occupied separate lots, and have each of them a family. The lessors of the plaintiff are the heirs at law of *Cadwallader R. Colden*, deceased .

The defendant moved for a nonsuit on the following grounds. 1. That the two persons made but one tenant. 2. The agreement entered into did not make them tenants, within the terms of the lease. 3. There was no privity between them and the first lessee. 4. The lease authorised one tenant besides the first lessee. The Judge then called on the plaintiff for further proof, which not being produced, he was nonsuited : but leave was given to move the court to set the nonsuit aside.

*Van Vechten* for the plaintiff, in support of the motion to set aside the nonsuit, and for a new trial, contended, that the intent of the lessor in introducing this condition, was to prevent the land from being burthened with tenants, and the soil impoverished by exhausting crops. In this view the condition is to be construed, that there was to be but one tenant to a hundred acres. If there were less than two hundred acres, there could be but one tenant. Without deducting the 70 acres reserved by the lessor for wood, still there were three persons occupying and using the land at the same time, though the quantity was less than three hundred acres.

*Woodworth*, attorney general, *contra.* The rent reser-

ved on this lease is very high, while the tenant is tied down by many severe restrictions. In the attempt to avoid the lease for a breach of this condition, the court will require the plaintiff to bring his case clearly, and strictly within the terms of the contract. Courts lean strongly against forfeitures; they will be astute to discover reasons in support of leases, rather than to avoid them. The seventy acres were a mere reservation of the wood, and to prevent its being cut down during the term. The tenant paid rent for 248 acres, and all the covenants extended to that quantity. Suppose there had been 299 acres, might the lessee not have farmed out 100 acres to B, and 100 acres to C, and have continued to occupy the residue? It would be a very rigid construction to say that such an occupation by three persons was a breach of the condition, so as to produce a forfeiture of the lease.

There is no privity between *Wilson*, the original lessee, and the occupiers of the land. If no privity is shewn, the plaintiff cannot recover on the ground of a forfeiture.— The word tenant, in the lease must be construed according to its legal signification. If A, the lessee, permit B to go on the land and cultivate it *on shares*, it is not a tenancy in B. It is a particular mode of hiring, or, *contract* for labour. The persons who thus occupied by permission, could not have maintained an action of trespass for a violation of such possession. Such occupiers do not acquire the rights of tenants.* The lease speaks of tenants, not mere occupiers or servants of the lessee. If this be correct, then there has been but two real *tenants* on the premises.

Van Vechten, in reply. If the condition of a lease be a hard one for a lessee, and for the sole interest of the lessor, a more strict construction ought to prevail against a forfeiture. But where the object of the condition is for the benefit of agriculture, and to prevent an exhaustion of the fertility of the land, by overburdening it with tenants, there is no reason for leaning in favour of the lessee.

NEW-YORK, May, 1805.

Jackson *ex demis* Colden and others v. Brownell.

* Cro. Eliz. 143. *Hare and others* v. *Celey.* V. Bac. Ab. 168. *Old edition.*

The supposition of 299 acres, does not remove the diffi-culty as to the number of tenants, any more than a suppo-sition of 201 acres, if the terms of the condition are to be adhered to. There were in fact four persons on the farm, and the hiring was for a year. The case cited from *Croke* is not analogous. There the tenant in possession lets the land to another to sow it upon shares of the crop; and it was a mere hiring of service.

The words of the covenant are, that the lessee shall not *permit* more than one tenant to each hundred acres. He was bound to know that these persons were in possession, and if he did know, the court will intend his permission, which is an answer to any objection as to want of privity between them.

THOMPSON, J. I think the number of tenants is re-stricted to two; no number beyond that will comport with the terms of the lease. The clear import of the restric-tion is, that there shall not be more tenants, than so that each one may have one hundred acres of land; and if so, it appears to me to result as a mathematical certainty, that 248 acres will admit of only two tenants. The given num-ber of acres being divided by one hundred, the quotient will designate the number of tenants. It is true, that courts have always held a strict hand over conditions for defeating leases. But when parties have made express stipulations, which in my judgment will admit of but one interpretation, not to give effect to them, would be mak-ing a new contract for parties, instead of construing that they have made for themselves.

How many families or tenants, then, within the mean-ing of the lease, have been permitted, at the same time, to use and occupy the premises? I think, clearly, more than two. *David Hughes* and *William Butler* resided upon the premises with their separate families, and im-proved separate parts of the land. They held under *Reuben* and *Seth Peckham*, who were the assignees of the lessee, and the agreement between them, was, that *Hughes* was

to have half of *Reuben Peckham's* part, and *Butler* half of *Seth Peckham's* part, for one year, the *Peckhams* retaining the residue; by this means the premises had at least, four separate and distinct occupants, independent of *Hall*, who was permitted at the same time, to sow a distinct part of the land with wheat. The compensation to be made to the *Peckhams* for the use of the land, being stipulated to be a portion of the produce raised, must have the same effect as if the rent had been reserved in money. *(Woodfall* 122.*)* The provision in the lease, was doubtless to guard against having too great a proportion of the land ploughed and sowed the same season, and to prevent the waste of timber for fire wood; and in this point of view, the restriction must be considered for the benefit of husbandry. The manner in which the premises have been occupied, and used, is, I think, clearly against the terms of restriction contained in the lease, as well as against what must have been the meaning and intention of the parties. My opinion, therefore, is, that the nonsuit should be set aside, and a new trial granted.

LIVINGSTON, J. There is nothing unreasonable in this condition, and if there were, it is not for us to disregard it on that account, the lessee having chosen to submit to it. We have only to inquire, whether it has been broken? The quantity of land leased, about which there appeared to be some dispute, was admitted in the argument to be 248 acres; for though the landlord had a right to cut wood on seventy acres, they were to be considered as among those demised, subject only to his privilege. There existed a right, then, in the lessee and his assigns to have two tenants or families on, or using, the premises, at any one time, if not three, but no more. The *gravamen*, or breach relied on, is, that the two *Peckhams*, *Hall*, *Hughes*, and *Butler*, making five in all, used the land at the same time.

*Hughes* and *Butler* took under the *Peckhams*, who were then owners of the lease. The first had half of *Reuben Peckham's*, and the other the same proportion of *Seth Peckham's* part, the *Peckhams* reserving the residue to themselves, and

NEW-YORK,
May, 1806.

Jackson *ex dem.*
Colden and
others.
v.
Brownell.

NEW-YORK,
May, 1806.

Jackson ex dem.
Colden and
others
v.
Brownell.

which of course they must have used as their own. With-out taking any notice of *Hall,* the land, during this year, was used by, at least, four tenants. It is of no importance on what terms *Hughes* and *Butler* took the land, whether on payment of money, or on a partition of its produce between them and the *Peckhams,* which is not an uncommon way of letting farms in the country. The only question is, whether they were tenants, or barely servants under the *Peckhams?* Each had every character of a tenant, and not of a mere la-bourer for the owner of the soil. They took under a con-tract to possess *for a year* : they occupied the same house ; they had an interest or estate in the land ; they paid rent in grain ; they might bring their own cattle on, and reap what they pleased from it, for their exclusive benefit, except grain, which was to be divided ; and, what is very important, they had a right (it not appearing they were restrained by special agreement,) to the use of wood for burning, repairing, &c. and if they continued in possession, by mutual consent, af-the end of the first year, a tacit renovation of the original contract would have been implied, and they could not have been dispossessed without half a year's notice to quit.* Very different is the condition of a person who is hired, for a few days, to plough or reap a particular field, on having part of the produce. He enjoys none of these privileges, and can do the land no injury, except in the mere work-ing of it, to which the original lessee and his assigns must be entitled to any extent. They might hire a hun-dred labourers, but could not divide the farm into as many shares, and grant to as many persons a right to pasture cattle, to cut wood, &c. *for a whole year,* as was granted to *Hughes* and *Butler,* without a palpable violation of the condition, or rendering it a nullity.

My opinion, then, is, that at the time we are speaking of, there were four tenants in the use and enjoyment of those premises, the two *Peckhams* with *Hughes* and *Butler* ; that the plaintiff was entitled on this evidence to a verdict ; and that the nonsuit of course must be set aside, and a new trial had, with costs, to abide the event.

     KENT, C. J. SPENCER, J. and TOMPKINS, J. concurred.

        Nonsuit set aside, and a new trial granted.

* 1 *Term,* 159.
*Flower*
v.
*Darby.*