### SUPREME COURT.

BRADFORD BURDICK, appellant, agt. AARON WASHBURN, respondent.

Where the owner of a farm enters into an agreement with a tenant, and lets him his farm on terms in substance, that the owner is to furnish the farm with the live stock agreed upon, and certain parts of the seed, grain and grass seeds, and the tenant is to furnish and supply the residue, and perform the labor and devote the care required for the purpose of carrying on the farm in a workmanlike manner, providing for and taking care of the stock and its increase, and to leave upon the farm at the expiration of his term, the same amount of live stock he received from the owner, agreeing to deliver to the owner one-half of all the products of the farm ; but no provision made of the *hay* which should be raised on the farm:

The enterprise, though not a partnership is in the nature of one ; the leading object being to place the tenant in a situation where he could work the farm on shares for the benefit of both.

The tenant therefore had a right to feed out the hay, on the farm, to the stock and horses designated in the agreement to be kept on the farm ; and if there was any *excess of hay* remaining after he had performed all his obligations under the agreement, it belonged to him and not to the owner.

The owner, before the expiration of the term, having turned the tenant out of possession of the premises, and taken possession himself, on the alleged ground that the tenant was feeding his (tenant's) horses on the hay in violation of the agreement, laid himself liable in damages to the tenant for the value of whatever excess of hay there might be proved to be.

*Erie General Term, May,* 1866.

*Before* GROVER, DANIELS, MARVIN *and* DAVIS, *Justices.*

THIS action was originally brought in justices' court, in the county of Allegany, and upon the trial before the justice, the plaintiff recovered a judgment exceeding the sum of fifty dollars. The defendant appealed to the county court of that county, where a new trial was had, and the plaintiff was non-suited. A motion was made for a new trial before court, upon exceptions taken at the trial, which was denied.

And from the order denying a new trial the plaintiff appealed to this court.

HAKES & STEVENS, *for appellant.*

I. It is claimed on the part of the plaintiff that inasmuch as there is no provision in the contract for dividing the hay which might be raised, that the title to the whole of the hay vested in the tenant and that Washburn chose to rely on the agreement of the tenant, viz: "To pay the said Washburn one-half of the avails of the stock, that is one-half of the butter, cheese, &c., together with one-half of the growth of said stock, and leave at the expiration of his term as much stock as he receives now on the premises." By the terms of the contract the plaintiff took the risks of the seasons, and in the event of loss of the hay, even without the fault of the plaintiff, it would be his loss. Such a loss would constitute no defense to an action brought by Washburn upon an alleged breach of the covenant, "to pay the said Washburn one-half of the avails," &c. The plaintiff being the sole owner of the hay, could maintain trover against Washburn or any other person, for its conversion. (*Stewart* agt. *Doughty,* 9 *John.,* 108.)

II. But upon the assumption that the parties were tenants in common of the hay in question, yet there being a destruction of the whole of the hay, the plaintiff was entitled to recover for the one undivided half at least. The conduct of the defendant was inconsistent with the idea of recognizing an ownership by the tenant to any portion of the hay, or any interest in the cattle or avails. In the case of *Fobes* agt. *Shattuck* (22 *Barb.,* 572), the court by Mr. Justice MULLETT, remark: "It appears that the defendant (tenant), was proceeding to do this (perform his contract), when he was stopped and prevented by the claim and conduct of the plaintiff (landlord), which might have amounted to a constructive conversion on his part of the whole of the wheat." The court further remark at the bottom of the page, that "By this claim and conduct the plaintiff might have been considered as waiving the performance of any fur-

ther acts by the defendant as a tenant in common, and electing to rely upon his ownership of the whole of the wheat" (the property in question), clearly showing that the conduct of the defendant in the case at bar would be sufficient to constitute a conversion without a sale or destruction. But when it is made to appear, as in this case, that the whole of the hay was used up without any recognition on the part of the defendant of any right in the plaintiff, either to the hay or the cattle, or the avails of them. A conversion by the defendant is shown, not only of the hay, but of any interest which the plaintiff might have in the stock or avails. (*Benedict* agt. *Howard*, 31 *Barb.*, 569.)

III. The defendant in feeding the hay to " a span of horses and a cow besides," in addition to the stock which Washburn put on to the place, would be liable for one half the hay so fed, even if he had taken possession of the hay and stock for the common benefit of both parties.

The plaintiff in leaving the premises when ordered by the defendant so to do, after the defendant took possession in the manner he did, cannot be considered as abandoning his legal right to his property. Hence it is claimed by the plaintiff that the county court erred in granting a non-suit, and in denying the plaintiff's motion for a new trial.

W. M. HAWLEY, *for respondent.*

I. The hay is not mentioned in the lease, nor is it referred to except by inference. Provision is made for the keeping of one cow for the individual use of the plaintiff, and one cow and one horse for the defendant.

By a fair construction of the lease the residue of the hay was to be fed to the stock, let with the farm, to the extent necessary to keep it, during the continuance of the lease.

The fact that no provision was made for its division or sale during the term, strongly favors such construction, and shows such to have been the intention and understanding of the

parties. The plaintiff's compensation for securing the hay was provided for in the growth and increased value of the stock. As to which would have been entitled to the surplus, if any, at the expiration of the lease, and in what proportions, it is not necessary now to determine.

II. It is conceded that so far as the grain, butter, cheese, apples, &c., had been divided, the lease was to that extent executed, and the title of each party to his share fixed and perfect. But as to the hay, growth of stock, &c., which had not been divided, and for the division of which no provision was made; it is insisted that the plaintiff's title was subject to the terms of the lease, and could not mature during the continuance of the term. A violation of the agreement by the defendant, or his refusal to allow the plaintiff to occupy the premises under it, cannot aid the plaintiff's title to the hay, nor to the increased value of the stock, so as to enable him to maintain trover for either, although it might furnish the plaintiff an immediate remedy by action for all his damages occasioned by the default of the defendant, including his interest in the hay, stock, &c., as well as for his labor and loss of profits, in which action all the rights of both parties could be litigated and determined, and such is the policy of the law. (*See* 19 *Wend.*, 207, *and cases cited.*)

III. The evidence shows that the hay was fed by the defendant to the same stock it was to have been fed to by the plaintiff if he had remained there. Trover will not lie for such an appropriation of the property. (*See* 1 *Taunton*, 241.)

IV. The plaintiff had violated and forfeited the lease on his part, by taking and carrying away seven or eight hundred of the hay, and feeding it to other stock on another farm, and by keeping his team on the hay in question without defendant's consent. The defendant had good cause to terminate the lease to save the residue of his property. At all events he has a right to insist that the litigation upon the lease shall be in such form as to allow of recoupment and counter claims for damages on his part.

V. When the plaintiff surrendered up the possession and property, no matter for what cause, he surrendered with it his title to the hay, and all else that remained undivided. It the surrender was voluntary, he is without remedy. If forced to surrender, his remedy is perfect, by action against the defendant for a violation of the agreement, and it is insisted that such is his only remedy. The rule sometimes insisted upon, allowing the plaintiff to choose between different forms of action for the same cause, applies to cases where a single action in either form will close the litigation, but does not apply here. It must be borne in mind that in this case the plaintiff was completely ousted, and the lease wholly and totally terminated, he no longer occupied under it. All the right of action he has, or ever can have under the lease or for its violation, was perfect the moment he surrendered possession. A single action will afford him a full and perfect remedy. The defendant insists that the plaintiff shall be confined to an action in such form as will enable the defendant to make recoupment, and litigate and submit his counter-claims growing out of the same contract. In any view of the case, the decision of the county court is correct.

*By the court*, DANIELS, J. The plaintiff claimed upon the trial of this action that he was entitled to recover the value of a quantity of hay, which it was alleged the defendant had converted to his own use. The hay had been cut by the plaintiff upon a farm which the defendant owned, and had let to the plaintiff by an agreement, dated on the fourteenth of July, 1862. By the terms of the agreement the plaintiff was to have the farm, except the house and garden, together with four cows, two yearling heifers and two steer calves, until the first of April, 1865, and to furnish the grass seed for seeding down the land broken up at the date of the agreement.

And one-half that required to seed down such land as should be afterwards broken up. For which the plaintiff

agreed to do all the work upon the farm, work it in a workmanlike manner, and trim the orchard. He also agreed to seed down the land required to be sown with grass seed, and furnish half the seed for that which should be broken up after the making of the agreement, and half the seed grain, and to deliver one-half the grain, potatoes, &c., in the half-bushel, and one-half the butter, cheese, &c., together with one-half the growth of the stock, to the defendant.

The plaintiff was to have his fire-wood from the farm, and one-half the apples and cider.

The plaintiff had possession of the farm, and carried it on under the agreement, until the seventh of January, 1863, when the defendant entered upon it and turned him out of possession. Previous to that time the plaintiff had fed his team from the hay, cut upon the farm, which the defendant claimed was in violation of the agreement, and on that account he dispossessed him. The hay in question remained upon the farm, and was afterwards consumed by the stock placed upon it under the agreement, and a span of horses and cow belonging to the defendant. By the terms of the agreement the defendant was entitled to have one cow and one horse kept upon the premises. This use of the hay the county court held to be justified by the agreement, and therefore non-suited the plaintiff. No express provision is contained in the agreement, relating to the hay that should be raised upon the farm, or indicating what should be done with it by the plaintiff.

What ever his obligations were in that respect must be determined constructively or inferentially from the subject matter to which it related, and to the provisions contained in it. And to reach such determination the circumstances should be considered under which the parties made and entered into the agreement.

This is a well settled and familiar rule. (*Springsteen agt. Sampson,* 32 *N. Y.,* 703.)

At that time they contemplated and intended that the plaintiff should take and cultivate the defendant's farm, and receive and maintain upon it certain live stock, for their joint and mutual profit and advantage. As his share of the joint adventure, the defendant furnished the farm, the live stock and certain parts of the seed grain and grass seed. While as an equivalent for that the plaintiff was to furnish and supply the residue, and perform the labor and devote the care required for the purpose of carrying on the farm, providing for and taking care of the stock and its increase, in a workmanlike manner, and to leave upon the farm at the expiration of his term, the same amount of live stock he received from the defendant. The enterprise though not a partnership, was in the nature of one. The object was to secure the joint benefit and profit of the parties, each contributing certain means to the production of that result.

The leading object was to place the plaintiff in a situation where he could work the farm on shares. And the stock was placed upon it to enable him to secure the increase and make the butter and cheese, which were to be divided equally between himself and the defendant.

The stock was to be sustained upon and by the farm, which could only be done by feeding to it the hay raised upon the farm, so far as that was necessary for that purpose. If instead of the hay being produced from the farm, the parties had mutually agreed to supply it by joint purchase, for the same purpose, there would be no question made but that they would own it as tenants in common. And there can be no legal or substantial difference between the effect of such a purchase and the production of it in the manner contemplated by this agreement, for it resulted from the joint means of the plaintiff and defendant; one contributing the land, and the other the labor that produced it. Instead of delivering one half the hay directly to the defendant, as the plaintiff covenanted respecting the grain, potatoes, apples, cider, and increase of the stock, he undertook to deliver to

him one half the result of it in the form of the butter and cheese that should be produced by it, which was only another form of giving the defendant one half the hay required to keep the stock.

In that manner he would have the benefit from it just as much, and probably more so, than he would if one half the hay had been delivered over to him. The plaintiff covenanted to work the farm in a workmanlike manner, which could only be performed in this respect by feeding the stock he was to keep upon it, with the hay produced by it. Under this view of the agreement, the defendant's interest in the hay was the same in effect, though not as direct as that which it secured to him in the grain, apples, and cider; and such interest, it is well settled was that of a tenant in common with the plaintiff. (*Jackson* agt. *Brownell*, 1 *John.*, 267; *Demott* agt. *Hayman*, 8 *Cowen*, 220; · *Caswell* agt. *Districh*, 15 *Wend.*, 379; *Putnam* agt. *Wise*, 1 *Hill*, 234; *Tripp* agt. *Riley*, 15 *Barb.*, 333; *Dinehart* agt. *Wilson*, *Id.*, 595.)

When the defendant took possession of the hay in question, therefore, he did not convert the property so as to authorize the plaintiff to maintain trover for it, even though the plaintiff had not forfeited his rights under the contract, · by feeding his own horses upon the hay raised from the farm, for nothing less than the destruction or ·sale of the joint property, will constitute a conversion by a tenant in common, or joint tenant. And as the hay was mostly devoted to the same purposes by the defendant, which the plaintiff had covenanted to devote it to by the agreement, that of feeding and maintaining the live stock placed upon the farm, he was not chargeable with a conversion in that appropriation of it; for changing the form a of chattel by one joint owner, by converting it to its ultimately intended and profitabe use, is not wrongful in judgment of law. (2 *Hlliard on Torts*, 425-8; 2 *Greenleaf on Evidence*, § 646; *Fleming* agt. *Greenville*, 1 *Taunt.* 241.)

But the defendant kept one horse upon the hay, besides the horse and cow he was entitled under the contract to have maintained upon the farm. *By the terms* of the contract there was no disposition either expressly or impliedly made of the hay that might remain, after the stock placed upon the farm, together with the defendant's horse and cow had been fed upon it, so far as they required it. *The excess, if any remained after the plaintiff had performed all the obligations in that respect* resting upon him, would vest in and belong to the plaintiff. That there was such an excess may be fairly and reasonably inferred, from the circumstance that the defendant was able to feed one horse upon it in addition to the stock—horse and cow the plaintiff was bound to maintain with it; and for that excess, whatever it might be proven to be worth, the plaintiff should have been allowed to recover by the county court. To that extent, and to that only, the defendant became liable to the plaintiff, in the form of action adopted in this case; and to enable the plaintiff to maintain the action to that extent, the order should be reversed, and a new trial directed.