GEORGE L. HERSKELL *vs.* HENRY P. BUSHNELL.

Gen. Statutes, tit. 7, sec. 192, provides that no cattle shall roam at large on any
public highway for the purpose of being kept or pastured thereon. Section
193 of the same statute provides that any person may seize and take into his
custody any animal which may be in any public highway opposite to land
owned or occupied by him, contrary to the provisions of the preceding section;
and that any person may take into his custody any animal trespassing upon
premises owned or occupied by him, provided said animal enters from the high·
way, or through a fence belonging to its owner, &c. Held—1. That the
second clause of the 193d section was independent of the first, and that it was
not necessary that the animal entering from the highway should have been
roaming in the highway contrary to the provisions of the preceding section.
2. That by the term "owned or occupied" was meant an actual or construct-
ive occupation, and that mere ownership, while a tenant was in actual and
exclusive occupation, was not sufficient.
Whether a letting of land on shares amounts to a lease depends much on the
particular terms of the agreement.
*A* let his farm to *B* on shares, the stock being owned in common, each furnishing
half the seed, and receiving half the crops, and both living in the house on the

farm. Held that the occupation of *B* as tenant did not exclude the occupation of *A*, and that *A* under the statute could seize and take into his custody cattle trespassing upon the farm in the manner therein described. [One judge dissenting.]

And held that he was not bound to act jointly with *B* in seizing the cattle.

ACTION on the statute (Gen. Statutes, tit. 7, sec. 200,) for the rescue of an animal of the defendant trespassing on the premises of the plaintiff and taken into his custody by the latter under Gen. Statutes, tit. 7, sec. 193; appealed to the Superior Court in New London County from the judgment of a justice of the peace, and tried, on a general denial closed to the court, before *Carpenter, J.*

The declaration averred " that on the 25th day of May, 1867, at &c., he, the plaintiff, seized and took into his custody and possession five cows which were then and there trespassing on premises occupied by him, situate [describing the premises;] which said cows entered said premises on which they were trespassing as aforesaid, from the highway adjoining the same; and the plaintiff says that the defendants afterwards, to wit, on the said 25th day of May, 1867, at said Lisbon, with force and arms, rescued said cows, seized and taken into the custody and possession of the plaintiff as aforesaid, out of the hands and custody of the plaintiff; whereby and by force of which statute the defendant has forfeited the sum of seven dollars for each of said cows so rescued by him, &c."

The court found the following facts: The cows described in the plaintiff's declaration were taken by him from a piece of land containing about one acre, adjoining the highway and uninclosed, on the 25th day of May, 1867. The land was a part of the farm owned by the plaintiff, but the farm was then, including the land in question, in the actual occupation of Augustus F. Reade, under a contract to carry on, manage and cultivate the same upon shares. The plaintiff and Reade each owned one-half the stock, each furnished one-half the seed, both lived in the house on the farm, and each received one-half the products of the farm. This contract, in the opinion of the court, amounted to a lease, and vested Reade with the possession of said farm.

The cows were taken by the plaintiff without authority from Reade, and confined in the barn-yard on the farm.

They were let out of the defendant's barn-yard but a short time before into an open yard, from which they went into the highway, and from the highway they went on to the land from which they were taken, (there being no fence,) the defendant and a boy who usually drove the cows to and from the pasture being in the meantime engaged in another matter.

There was no intention on the part of the defendant to suffer his cows to go at large, and on this occasion they were not roaming at large on the public highway or common for the purpose of being kept or pastured thereon.

The defendant claimed that upon these facts the plaintiff had no right to take the cows into his custody under the provisions of the statute upon which the suit was brought, and the court so ruled *.

It further appeared that in about fifteen minutes after the cows were taken by the plaintiff, and before he had had reasonable time to give the notice required by statute, they were taken from his custody by the defendant, who had no knowledge that they were intended to be restrained or impounded by the plaintiff, until he was in the act of taking them from the plaintiff's custody, and that he was then informed by the plaintiff that the cows were impounded, and forbidden to take them until damages and fees should be paid.

---

* The sections of the statute referred to are as follows :—

" Sect. 192.  No cattle, horses, mules, asses, sheep, goats, geese, or swine shall roam at large upon any public highway or common, for the purpose of being kept or pastured thereon, either with or without a keeper.

' Sect. 193.  Any person may seize and take into his custody and possession any animal which may be in any public highway, and opposite to land owned or occupied by him, contrary to the provisions of the preceding section ; and any person may take into his custody and possession any animal which may be trespassing upon premises owned or occupied by him, provided said animal enters the premises from the highway, or through a fence belonging to the owner of said animal, or through a lawful fence belonging to any other person.

" Sect. 200.  Every person who shall rescue any animal seized and taken into custody under the provisions of the 193d section of this act, out of the hands or custody of the person thus having seized or taken it, shall forfeit the sum of seven dollars, one-half of which forfeiture shall be to the use of him who shall prosecute to effect, and the other half to the treasury of the town where the offense is committed."

The plaintiff claimed that the contract between the plaintiff and Reade did not amount to a lease, nor divest the plaintiff of the occupancy of the premises, and prayed the court so to decide ; but the court did not so decide.

The court having rendered judgment for the defendant, the plaintiff moved for a new trial for error in the rulings of the court.

*A. F. Park* and *Lucas*, in support of the motion.

1.  It being found that the cows were seized and taken into custody by the plaintiff, while trespassing upon premises owned by him, and that they entered upon those premises from the highway, it is immaterial whether they were roaming at large on the public highway for the purpose of being kept or pastured thereon. Gen. Statutes, 130, § 193 ; 1 Swift Dig., 653 ; Taylor's Land. & Tenant, § 765.

2.  It was not necessary to prove the occupancy alleged in the declaration ; it was sufficient to establish by legal proof such an interest in the premises as the statute requires ; and that is either ownership or occupancy. 1 Swift's Dig., 654 ; *Parker* v. *Hotchkiss*, 25 Conn., 321 ; *Avon Manufacturing Co.* v. *Andrews*, 30 id., 476. Gen. Statutes, 130, § 193. But if necessary, the plaintiff proves his possession in proving his ownership. Ownership of uninclosed land carries with it occupancy until the contrary is shown. 1 Swift's Dig., 162 ; Taylor's Land. & Tenant, § 86 ; Bouvier's Law Dict., "Lease."

3.  The plaintiff's contract with Reade, as found by the court, did not amount to a lease, or deprive the plaintiff of the occupancy of his premises. 1st. It is not found to be a lease in fact, nor is it a lease in form. 2d. It contains no reservation of rent or any thing to be given or paid as rent. 3d. It contains no definite term of use nor any stipulation for exclusive and quiet possession. 4th. The parties were tenants in common of the products from their origin, or common occupiers, and it is for the interest of both parties to the contract that it should receive such construction as makes them tenants in common of the products, and the law gives such construction in the interest of agriculture when the contrary does not clearly appear. At most Reade's interest

in the premises was that of a joint occupant with the plaintiff, which, if true, can be of no avail to the defendant. 1 Swift's Dig., 131 ; Bouvier's Law Dict., "Lease" ; *Bradish* v. *Schenck*, 8 Johns., 151 ; *Caswell* v. *Districh*, 15 Wend., 379 ; *Putnam* v. *Wise*, 1 Hill, 234 ; 4 Kent Com., 95, sec. 3 ; *Walker* v. *Fitts*, 24 Pick., 191 ; Hilliard on Real Prop., 199, sec. 24 ; Taylor's Land. & Tenant, § 24 ; 1 Washb. on Real Prop., book 1, ch. 10, sec. 10 ; Bouvier's Law Dict., "Occupier ;" Webster's Dict., "Occupier."

*Hovey,* contra.

1.   The contract between the plaintiff and Reade created the relation of landlord and tenant between them and gave to the latter the exclusive possession of the land upon which the cows rescued were taken by the plaintiff. *Jackson* v. *Brownell,* 1 Johns., 267 ; *Moulton* v. *Robinson*, 7 Fost., 550, 557 ; 1 Washb. on Real Prop., book 1, ch. 10, sec. 10 ; *Hoskins* v. *Rhodes*, 1 Gill & Johns., 266 ; *Woodruff* v. *Adams*, 5 Blackf., 317 ; *Rinehart* v. *Olwine,* 5 Watts & Serg., 157 ; *Ross* v. *Swaringer,* 9 Ired. (Law,) 481 ; *Doremas* v. *Howard,* 3 Zabr., 390 ; *Blake* v. *Coats,* 3 Iowa, 548 ; *Hatchell* v. *Kimbrough,* 4 Jones, (N. C.) 163 ; *Burns* v. *Cooper,* 3 Penn. S. R., 426 ; *Walls* v. *Preston,* 25 Cal., 59 ; *Walker* v. *Fitts,* 24 Pick., 191.

2.   As the cows were not roaming at large on the highway from which they entered the premises in question, the plaintiff had no right to take them into his custody and possession under the provisions of the statute upon which this suit is brought.   Gen. Statutes, tit. 7, §§ 192, 193, 197.   See also sections 180 and 190 of the same statute.

Loomis, J.   This is an action for a forfeiture pursuant to section 200 of the General Statutes, page 132.   To incur the forfeiture it must appear that there was a rescue of the cattle out of the custody of the person who seized or took them into his custody, under the provisions of the 193d section, page 130.

In this case there was in fact a rescue of the cattle taken,

but the forfeiture could not have been incurred unless the cattle, when thus rescued, were lawfully in the custody of the plaintiff.

The question to be determined therefore is, whether the taking of the cattle by the plaintiff, in this case, was authorized by the statute.

The statute under which the plaintiff took the cattle is as follows :—"Any person may take into his custody and possession any animal which may be trespassing upon premises owned or occupied by him, provided said animal enters the premises from the highway, or through a fence belonging to the owner of said animal, or through a lawful fence belonging to any other person." Gen. Statutes, p. 130, sect. 193.

There are three requisites to a lawful taking of the animals under this statute.

1. The premises where the animal is found must be owned or occupied by the person so taking the animal.

2. The animal must be trespassing.

3. It must have entered the premises in one of the three ways mentioned in the proviso of the statute ; namely, from the highway, or through a fence belonging to the owner of the animal, or through a lawful fence of any other person.

First. Had the plaintiff the requisite interest in the premises where the cattle were taken ?

What sort of interest is contemplated by the words "owned or occupied ?" Is mere ownership sufficient when the occupation is in another ?

Looking simply at the grammatical construction of the phrase, and giving the ordinary meaning to each word, and to the disjunctive " or" between the words, we should consider it sufficient if there was mere ownership of the premises without occupation, or actual occupation without ownership : but when we consider that the statute gives the right to take the animals only when trespassing on the premises, we are induced to believe that the intention of the act was to confer this summary remedy only upon the possessor of the premises in a case where the possession was injured. The phrase

"owned or occupied" is therefore to be construed with reference to the principles applicable to trespass.

The general ownership draws with it the constructive possession, if the premises are not in the possession of some other person ; but if the possession is in another, then only the person in actual possession can defend and protect that possession by taking the cattle into custody. No one else indeed would have any right to enter on the premises for any such purpose.

The terms "owned or occupied," as used in this statute, are to be considered convertible terms, the meaning being, that the premises must be in the actual or constructive occupation of the person who is authorized to take the animals. If, therefore, the plaintiff was a mere owner of the premises, but had, as claimed by the defendant, leased the same to Reade, who was at the time in actual occupation, then the judgment of the court for the defendant would have been correct.

But do the facts found by the court show such a lease of the premises from the plaintiff to Reade as divested the former of possession and conferred it upon the latter ?

It might seem at first blush that the finding of the court concluded the parties upon this issue, and settled the matter, as a question of fact, that the premises were in the actual occupation of Reade ; but this view is not correct.

The court, it is true, finds that the premises were in the actual occupation of Reade, but it is plainly found as an inference of law from certain facts stated. It is expressly stated that Reade's occupation was under a contract between him and the plaintiff, to carry on, manage and cultivate the farm upon shares for one year, and that this contract was that the plaintiff and Reade each owned one-half the stock, each furnished one-half the seed, each lived in the house on the farm, and each received one-half the products of the farm. Upon these facts as to the contract it appears that the parties were at issue upon a question of law,—whether it amounted to a lease so as to divest the plaintiff of the occupancy ; and the court found, contrary to the claim of the

plaintiff, that this contract amounted to a lease and vested Reade with the possession of the farm. The question therefore is fairly open to review, as matter of law, whether or not the court was correct in deciding that the contract above mentioned amounted to a lease, and vested the possession of the land in Reade as tenant.

The courts have found it difficult to fix any general rule by which to determine whether or not the carrying on a farm by one not the owner upon shares, constitutes him a tenant with a separate right of property in the crops, and the authorities in different states, and even in the same state, are not perfectly uniform. Whether a letting on shares amounts to a lease, depends much on the particular terms of the agreement. It may be considered mere payment for the labor of cultivating the farm by a part of the crops raised, as would usually be the case where land is let on shares for a single crop; or it may make the owner and occupier tenants in common of the crops, being a mere agreement that the occupier shall work the farm a certain time and divide the profits with the owner; or it may amount to a lease, giving the occupant an exclusive interest in the soil, as where the occupant is to pay a certain quantity of grain or hay for the premises, the owner of the soil having no interest till the grain or hay is actually delivered.

In the state of New York, where the form of the agreement was like a lease, reserving rent, and was for any definite time, the earlier cases, as in *Stewart* v. *Doughty*, 9 Johns., 108, and *Jackson* v. *Brownell*, 1 Johns., 267, held it to amount to a lease, but the later and better considered cases in the same state have overruled the doctrine of the cases referred to.

In *Caswell* v. *Districh*, 15 Wend., 379, where the agreement was to let land on shares for one year, the occupant yielding a certain portion of each crop to the owner of the land, the court held that it was a letting upon shares merely, and not a lease to render rent. NELSON, J., in giving the opinion, after alluding to the fact that there was nothing in the contract to indicate that the stipulation for a portion of the crops was by way of rent, and that the shares were of

specific crops raised upon the farm, remarks :—" It is very material to the landlord, and no injury to the tenant, that this view of the contract should be maintained, unless otherwise clearly expressed, for then the landlord has an interest to the extent of his share in the crops. If it is deemed rent the whole interest belongs to the tenant until a division. Where a farm is let for a year upon shares, the landlord looks to his interest in the crop as his security, and thereby is enabled to accommodate tenants who otherwise would not be trusted for the rent."

In *Putnam* v. *Wise*, 1 Hill, 234, the owners of a farm agreed with two persons, by contract under seal, containing the technical phraseology of a lease reserving rent, that they should occupy the farm and work it for one year, and if they performed the agreement might have it in the same way for a year longer, the occupiers agreeing in consideration thereof to yield and pay the owners one half of all the grain raised ; and the court held that until a division the parties were tenants in common. COWEN, J., held that, in order to determine whether such a contract was to be regarded as a lease or not, the true test was to see if there was any provision in whatever form for dividing the specific products of the premises. If such a provision was found the parties should be regarded as tenants in common. In *Dinehart* v. *Wilson*, 15 Barb., 595, will be found a similar decision, recognizing the same test as above mentioned.

In *Walker* v. *Fitts*, 24 Pick., 191, there was a written contract between the plaintiff and defendant that the latter should cultivate the plaintiff's farm for one season, each furnishing one-half the seed, Fitts to manage according to the rules of good husbandry, and to deliver to the plaintiff one-half of the crops of every kind, properly secured in the plaintiff's house, cellar and barn, the corn to be divided in the ear, other grain to be threshed and then divided. This was held not a contract of hire, nor a mere license to enter and cultivate the farm, nor a tenancy at will, but the parties were tenants in common of the crops growing until a division. MORTON, J., in giving the opinion, with great good sense

remarks :—" The principle that the owner and occupant are tenants in common of the forthcoming crop during all its stages of growth and preparation for use and until a severance by the parties, is not only supported by authority but founded in good sense and justice. It better protects the rights and interests of both parties, and is more salutary in its operation than any other rule."

In the light of these cases, we think the contract as found by the court, in the case now under consideration, makes the plaintiff and Reade tenants in common of the crops. It is possible that the whole contract is not reported, but as the court below assumed to give the terms of the contract we must treat it as containing all the essential features. It no where appears that one-half the products was to be rendered by Reade and received by the plaintiff as rent, or that the contract in terms gave the exclusive possession to Reade ; it was not in the form, nor did it contain the technical phraseology, of a lease.

The contract as given exhibits the parties as both living in the house on the premises, both placing stock on the farm, both furnishing seed with which to sow and plant, both receiving the products of the farm of every kind, share and share alike. There is therefore no feature of a lease, giving Reade exclusive possession and separate right of property in the crops, but every feature of a tenancy in common of all the crops and products of the farm, from their origin until divided.

The entry of cattle on these premises inflicted a common injury upon the plaintiff and Reade.

The plaintiff, therefore, ought to be considered an occupant, with the right to take into his custody the cattle found doing damage to crops in which he has a joint and common interest with another. The fact that the interest of the plaintiff is in common with another will not make the taking by the plaintiff alone illegal. If the plaintiff had sued in his own name for the injury, in an action of trespass, advantage could have been taken of the omission to join Reade, the co-tenant, only by a plea in abatement. It could not have been

taken advantage of under the general issue, because proof that the right violated was joint is no proof that the plaintiff's property was not injured by the defendant's cattle. Gould's Pleading, p. 276, § 111.

If not available in a direct action of trespass for the injury, certainly it cannot be in this action for a forfeiture, where the only question is whether the plaintiff had such an interest under the statute as gave him the right to take the cattle into his custody, and for this purpose surely a joint interest is as good as a several interest.

It would be absurd to require both tenants in common to participate in taking the animals into custody. Each has an immediate right and interest to protect that requires this summary remedy, and in protecting his own interest he protects that of his co-tenant, who cannot complain because he was not first consulted.

The plaintiff, therefore, is entitled to a new trial, unless the other facts of the case show that he had no right to take the cattle, and therefore suffered no injury on account of the erroneous decision above mentioned.

The second requisite we have already mentioned as essential to a lawful taking, is that the animals be found trespassing. Upon this part of the case no question is presented by the record for our decision. It appears, however, that the cattle were taken by the plaintiff while they were upon the land referred to, where they had no lawful right to be, which would constitute trespass at common law.

The only remaining question which the record presents, is, whether the cattle must have been roaming at large in the highway, for the purpose of being kept or pastured thereon, at the time they left the highway and entered the plaintiff's premises? The court decides this question in the affirmative. Is the decision correct?

That section of the statute by virtue of which the animals were taken, (Gen. Statutes, p. 130, sect. 193,) contains two distinct parts or provisions. The first part provides that " any person may seize and take into his custody and possession any animal which may be in any public highway, and

opposite to land owned or occupied by him, contrary to the provisions of the preceding section." Then follows the second provision: " And any person may take into his custody and possession any animal which may be trespassing upon premises owned or occupied by him, provided said animal enters the premises from the highway, or through a fence belonging to the owner of said animal, or through a lawful fence belonging to any other person."

It is obvious that this second provision is independent of the other, and being so, the words at the end of the first provision, " contrary to the provisions of the preceding section," cannot apply to, or in any way qualify, the second clause. The preceding section above referred to is the section of the statute that prohibits animals from running at large upon any public highway or common for the purpose of being kept or pastured thereon. The second part of this section is complete in itself, and gives the clear right to the owner or occupier to take any animal into his custody found on his premises trespassing, provided it entered thereon in one of the three ways mentioned, namely. from the highway, or through the fence of the owner of the animal, or through a lawful fence of any other person. The statute might have been more just and complete if it had qualified the second part with the words " contrary to the preceding section ;" but these words, having been omitted in a clause entirely independent of the first clause where they occur, cannot be supplied by construction without doing violence to the plain meaning of the language employed. The second clause prescribes all the requisites and conditions necessary to confer the right to take animals into custody, and no others can be added without usurping the functions of the legislature.

We think there is manifest error in the judgment complained of, and a new trial is advised.

In this opinion PARK, J., concurred. PHELPS, J., dissented. CARPENTER, J., having tried the case in the court below, did not sit.

PHELPS, J.   The argument in support of the motion for a new trial presents two claims.   The first is, that under the clause in section 193, of the General Statutes, chapter 3, title 7, it is immaterial whether the animal taken up was roaming at large in the highway with the purpose on the part of its owner of depasturing it there.   The preceding clause of this section expressly refers to section 192, which prohibits the roaming at large of animals on the highways and commons, and its enforcement is particularly limited to animals so at large for the purpose therein specified.   That on which the action is brought differs in phraseology, and in terms extends to any animals trespassing on the land of another, having entered upon such land from the highway, or through a fence belonging to the owner of the animal, or a lawful fence belonging to the owner of the land.

The policy of our statute with regard to fences is variant from the common law, and requires of land owners to fence their particular enclosures for their protection, except against unruly animals and those unlawfully at large, and it is made their duty to do this, not only as towards adjoining proprietors, but also next the commons and highways.

The clause under consideration is to be construed with reference to other provisions of the statute on the same general subject, and when it speaks of animals trespassing on land owned or occupied by another, which have entered from the highway, it refers to those *unlawfully* at large on the highway.

The owner or occupant of land is not obliged to fence it next the highway against such animals.   It then becomes an important enquiry when is an animal *unlawfully* at large ? Obviously when in the highway, and not in front of land belonging to the owner of the animal, by any fault or negligence of such owner with respect either to the condition of his fences or the care of his animals; and the degree of care required to be exercised by him must necessarily depend, to a reasonable extent, on the orderly or disorderly habits of the animal to be restrained.

If a man turns his cow into his yard with the gate open, or bars down, by which it passes without hindrance into

another open yard, and from thence into the highway, and while the person whose care it is to look after it is attending to some other duty, and it remains though but for a short time in the highway, it is at large from the fault of the owner; and if it strays from the highway upon a neighbor's premises, it is trespassing within the meaning of this provision, and may be lawfully taken into the custody of the owner or occupant of the land, though he had no fence between his premises and the highway. The case finds the precise facts embraced in this statement, and the plaintiff's claim to this extent may well be sustained.

Animals found trespassing and taken into actual custody under the provisions of this and other existing statutes are in the same legal situation as if, instead of being confined in the yard or stable of the owner or occupant of the land, they had been driven to and restrained in a public pound, and the act of breaking the enclosure and taking them away is attended by the same legal consequences. When a pound is broken and animals taken therefrom, and an action is brought to recover the penalty prescribed by statute for that offence, the defendant cannot set up the irregularity or illegality of the impounding. The impounded animals are in the custody of the law, and can only be delivered by an action of replevin, or some other legal method. Gilbert on Distress, 53; 3: Blackstone's Com., 12; *Melody* v. *Reab,* 4 Mass., 471; *Commonwealth* v. *Beale,* 5 Pick., 514; *Field* v. *Coleman,* 5 Cushing, 267.

It follows that the defendant's claim that the animal was not roaming at large, and therefore not liable to be taken by the plaintiff, was irrelevant, and the judgment of the court with respect to it erroneous. But as upon another ground the claim of the plaintiff is in my opinion entirely unfounded, and judgment should in any event have been rendered against him, the decision in the defendant's favor on the point I have been considering was immaterial, and a new trial for error with respect to that ought not to be granted.

2. The second claim is, that the plaintiff by virtue of his

ownership was the occupier of the premises, and that proof of title sufficiently established the averment of occupation.

In cases of trespass for injury to real property, it is sufficient at common law to prove a lawful possession as against the defendant, even though a title be alleged. In those cases the injury to the possession is what constitutes the wrong, and the question of title is entirely immaterial. Therefore when title and possession concur in the same person the former includes the latter, and proof of possession only, under an allegation of title, is sufficient. The proof comes up to the essential part of the allegation. But in an action on a statute, where a remedy is given to one person alone, or to one of two persons, distinguished by their particular interest in or control over the premises in question, the allegation is material, and must be proved.

The declaration alleges that the plaintiff was the occupant of the premises. This averment is descriptive of the character of his interest. An averment of either title or occupancy was indispensable and material to be proved. The plaintiff had in fact the title, and the court expressly found that he in fact had not the occupation. He elected to declare and rely solely upon an occupation, and the allegation was unsupported by the necessary proof. This averment lay at the foundation of his right to recover, and having failed to establish it he necessarily failed to entitle himself to a judgment.

The statute in question authorizes " any person to take into his custody and possession any animal which may be trespassing upon premises *owned or occupied* by him," &c. The word "occupied" means personally possessed and used, and has relation to the individual who at the time has the *actual* occupation, as distinguished from another, who by virtue of a legal title has a merely *constructive* possession.

I think the manifest intention of the framers of this statute was to give a remedy to a single person—to the owner, if in actual possession, and, if not, to the actual occupant, though not the owner. Construed in connexion with the context and subject matter this seems the only reasonable interpretation of the words " owned or occupied." The real

and immediate trespass and injury is to the individual who at the time has the cultivation and possession of the land, whether he be the owner, or some other occupant under a lease or other contract. It would be absurd to hold that the owner, when not the actual occupier, was the party injured and entitled to redress except as owner, and equally so to claim the remedy for both the owner and an occupier under him; and I think the theory on which the plaintiff's claim is predicated necessarily involves the principle of one of these two propositions. The only ground, aside from his title, on which the owner's claim to the right to take the trespassing animal into his custody can be placed, is that he is tenant in common with the occupier in the net products of the land, which in my judgment is an interest too remote to entitle him to this remedy, and the phraseology of the statute seems clearly to exclude him.

The plaintiff also insists that the Superior Court erred in the opinion it expressed that the contract between the plaintiff and Reade amounted to a lease, and vested Reade with the possession of the farm. That contract, if not a technical lease, was in the nature of such an instrument and conveyed the right to the actual possession. But whether it was in all its terms equivalent to a formal lease seems wholly unimportant. If there had been a written lease duly executed, conveying the premises to Reade to cultivate on shares, each party to furnish an equal proportion of the cattle to stock the farm and half the seed for planting, with a reservation to the lessor of the right to occupy one half of the dwelling house on the farm and a provision for an equal division of the crops, the case would not differ from what it now is in any aspect essential to the rights of the person who had the cultivation and management of the farm. The same person would in either case be the occupier of the premises. I confess my entire inability to understand how the plaintiff, being owner of the premises, in which character he might properly have sued but did not, and another person being the actual occupant, can maintain an action as occupant by reason of his title. Having declared as occupant, of what importance

are the terms and nature of the contract by virtue of which the occupation is in fact vested in another? And how can it be material under the phraseology of this statute, construed with reference to the clearly apparent intention of the legislature, whether he was a tenant in common with the real occupant in the growing and undivided crops?

I think the fact that the plaintiff and Reade were tenants as above mentioned is wholly immaterial as affecting the character of the tenure by which Reade held the premises, and especially in view of the adjudicated fact that he was in actual occupation. That tenancy is at most merely an element in the contract by virtue of which he held the occupation.

By this statute the legislature manifestly designed to give to an *actual occupant*, whether a strictly formal *lessee* or not, the right to take into custody animals which were trespassing. This is obvious from the language used. If they had intended to restrict the operation of the statute to lessees in the technical sense, they would have employed language appropriate to express such a limited meaning. They evidently designed to give the act a more enlarged and liberal operation, and hence in reasonable and fitting terms applied its provisions to any person who for the time being was a mere actual occupant. There is a significant propriety in their doing this, because precisely the same reason exists for including within its scope a *bonâ fidê* occupier without a formal lease as for including one with. The *personal* annoyance and injury arising from a trespass was the mischief for which a simple and summary remedy was intended, and that mischief in either case is precisely the same.

If the owner, by the legal force of his title, and of his tenancy with the actual occupant in the growing crops, is in contemplation of this statute to be considered the real occupier of the premises, I think the framers of the statute were unfortunate in the use of the expression " *owned or occupied.*"

I would not advise a new trial.